PEOPLE v BUKOSKI

PEOPLE v WIAK

1. Searches and Seizures—Automobiles—Fleeting Opportunity.

A car that is parked, locked, and unoccupied at the time of a search presents a fleeting opportunity to search when the defendant's presence or time of return is unknown and a search without a warranty may be justified.

2. Searches and Seizures—Automobiles—Without Warrant—Probable Cause.

There is no difference, for constitutional purposes, between seizing a car and searching it at the station house, without a warrant, and carrying out an immediate search at the scene, given probable cause to search.

3. Criminal Law—Instructions to Jury—Lesser Included Offenses.

Failure of the trial court to instruct on lesser included offenses is not reversible error when no request for such instruction is made and the court does not affirmatively exclude consideration of lesser offenses.

4. Criminal Law—Sentencing—Juvenile Records.

The court's consideration of defendants' juvenile records on sentencing is error (MCLA 712A.23).

Appeal from Wayne, George E. Bowles, J. Submitted Division 1 April 4, 1972, at Detroit. (Docket No. 11537.) Decided June 26, 1972.

Edmund Bukoski and Lawrence Wiak were convicted of larceny in a building. Defendants appeal.

References for Points in Headnotes

[1, 2] 47 Am Jur, Searches and Seizures § 18.
[3] 53 Am Jur, Trial § 693.
[4] 29 Am Jur 2d, Evidence § 333.

Affirmed in part, reversed in part, and remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Richard A. Monash,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Daniel S. Seikaly,* Assistant Defender, for defendant.

Before: LEVIN, P. J., and BRONSON and VAN VALKENBURG,* JJ.

BRONSON, J. Defendants were convicted of larceny in a building, MCLA 750.360; MSA 28.592, by a jury in Wayne Circuit Court. Defendant Bukoski was sentenced to a prison term of two to four years. Defendant Wiak was sentenced to a term of one and one-half to four years. They appeal of right.

On the evening of November 28, 1970, patrolmen Ronald Nawrocki and Leonard Pietrzak of the Hamtramck Police Department were summoned to the Polish National Alliance Hall. Upon their arrival, they were informed by one Michael Vitas that some coats had been taken from the hall. Mr. Vitas told the officers that he had attended a wedding reception that evening at the hall. As several guests began leaving, they discovered that their coats were missing. Vitas reported seeing the defendants near Wiak's car at about the same time as he was waiting on the corner for a friend. Wiak allegedly gave the keys to the car to Bukoski, who started the motor while Wiak disap-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

peared into the hall. When Wiak returned, Buko-
ski took a bundle from the back seat and put it
into the trunk.

On learning that defendant Wiak's car was in-
volved, the two officers called for a tow truck to
impound the car. While the car was being hoisted
onto the truck, the defendants were located and
arrested, Bukoski in front of the hall and Wiak in
a bar about two blocks away. When they returned
to the car, Bukoski told the officers that the keys
were in a nearby flower bed. After Officer Naw-
rocki retrieved the keys, the tow truck was sent
away. Wiak then asked why his car was being
impounded, was told that the police wanted to
check his trunk, and responded: "Fine, I have
nothing to hide". Three stolen coats were found in
the trunk.

The defendants raise three issues on appeal.
Their first contention is that, conceding the valid-
ity of their arrests, the warrantless search of the
parked, unoccupied and locked automobile, which
was not in the vicinity of either of their arrests,
violated their Fourth Amendment rights. The
prosecutor argues that the failure to challenge the
admission of the resulting evidence below pre-
cludes review. *People v Ferguson,* 376 Mich 90
(1965). In general, this is true.

In *People v Degraffenreid,* 19 Mich App 702
(1969), this Court recognized that where constitu-
tional rights are involved, the failure to object
below will not prevent us from granting a new
trial where such failure is of sufficient importance
that it may have been decisive. In such a case, the
reasons which underlie the preservation of error
rule must give way to the interests of justice and
the protection of constitutional rights. This is true
despite the fact that a defendant's right not to

have evidence obtained by illegal search and seizure used against him may be waived by his attorney. *Henry v Mississippi,* 379 US 443; 85 S Ct 564; 13 L Ed 2d 408 (1965).

Where a defendant raises a constitutional question for the first time on appeal, we must ask two questions: (1) was the evidence decisive, and (2) was the evidence erroneously admitted into evidence. *People v Gunn,* 34 Mich App 106 (1971). In *Degraffenreid,* the Court found it was not necessary to determine whether the evidence was erroneously admitted since exclusion of the evidence would not have meant acquittal for the defendant.

In the instant case, the only evidence directly linking defendants to the crime was Michael Vitas' testimony. The admission of the coats found in the search of Wiak's automobile tended to give important corroboration to this testimony. The exclusion of this evidence, we believe, could make a difference in a new trial. We are therefore obliged to consider the validity of the search. *People v Dogans,* 26 Mich App 411 (1970).

In *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), the United States Supreme Court held that the warrantless search of an automobile was valid where exigent circumstances existed. In that case, the police officers involved had probable cause to believe defendants were transporting contraband liquor between Detroit and Grand Rapids. The Supreme Court found that the failure to seek a search warrant was excusable because of the ease with which the vehicle could have been moved to another jurisdiction.

*Carroll* was amplified in *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), and *Coolidge v New Hampshire,* 403 US 443; 91 S

Ct 2022; 29 L Ed 2d 564 (1971). In *Chambers,* the car in which the defendants were riding was stopped because the car and its occupants matched a description given by a witness to a robbery. The defendants were arrested and the car was moved to a police station where it was searched shortly thereafter. The Supreme Court upheld the search. It could find little difference, for constitutional purposes, between stopping and searching the car immediately without a warrant and seizing the car and holding it at the police station for a search warrant. The initial intrusion having been valid, the defendants' rights would have been no less violated by holding the car while a warrant was obtained. To have required a warrant at the station house would have placed a premium on searching at the scene. *People v Weaver,* 35 Mich App 504 (1971). In reaching its decision the Court said of *Carroll:*

"Neither *Carroll, supra,* nor other cases in this Court require or suggest that in every conceivable circumstance the search of an auto even with probable cause may be made without the extra protection for privacy that a warrant affords. But the circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily movable. Where this is true, as in *Carroll* and the case before us now, if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search.

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable-cause issue

and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible." *Chambers v Maroney,* 399 US 42, 50–51; 90 S Ct 1975, 1980–1981; 26 L Ed 2d 419, 428.

In *Coolidge, supra,* the defendant was arrested on a murder charge in his home. At the time, his car was parked and locked in his driveway. Subsequently, the police returned to the home without a warrant and impounded the car. The first of three painstaking searches for scientific evidence was made two days later. The Supreme Court held that under no stretch of the imagination did exigent circumstances exist. It was therefore necessary for the police to secure a warrant prior to seizing the automobile. The Court said of *Carroll:*

"The underlying rationale of Carroll and of all the cases which have followed it is that there is 'a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where *it is not practicable to secure a warrant,* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' 267 US, at 153 [45 S Ct, at 285; 69 L Ed, at 551; 39 ALR, at 800]. (Emphasis supplied.)

"As we said in *Chambers, supra,* at 51 [90 S Ct at 1981; 26 L Ed 2d at 428], 'exigent circumstances' justify the warrantless search of 'an automobile *stopped on the highway,'* where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must

be obtained.' '[T]he opportunity to search is fleeting
* * * .' (Emphasis supplied.)" *Coolidge v New Hampshire*, 403 US 443, 459–460; 91 S Ct 2022, 2034–2035; 29
L Ed 2d 564, 579.

Defendants argue that since Wiak's car was
parked, locked and unoccupied at the time of the
search, the rationale of *Coolidge* should govern.
They contend that the crucial factor in *Carroll* and
*Chambers* was the fact that the cars were stopped
on the open highway and that it was their mobility, which made the cars in each case "a fleeting
target for a search", that excused the need for a
warrant. They further contend that to extend the
*Carroll-Chambers* rule to a parked, locked and
unoccupied automobile would be to unjustifiably
expand an exception to the requirement that a
warrant be obtained prior to a search.

The prosecutor argues that the defendants have
misconstrued the "fleeting target" language found
in *Chambers*. It refers not to the fact of movement,
but to the ease of movement.

The Court in *Coolidge* did place some emphasis
on the fact that the cars in *Carroll* and *Chambers*
had been stopped on the open highway. A careful
reading of these cases, however, indicates that the
fact of movement was not the decisive difference
between *Coolidge* and *Carroll* and *Chambers*. The
fact that Coolidge's car was parked in his driveway
was one of many factors the Court relied on in
determining that the opportunity for search was
not fleeting. Coolidge had been a suspect for several weeks, had been cooperative, and there was
no indication of an intent to flee. He had the
opportunity to remove and destroy incriminating
evidence. The circumstances of his arrest were
such that he could not have escaped. Subsequent
to his arrest, his wife was taken to a relative's

without either of their cars for the night. During the night, the house was under constant guard. The search itself was not for contraband, stolen property, or dangerous instruments. In short, the police could be reasonably certain that the car would remain where it was found. The opportunity for search was not fleeting.

In the instant case, when the police were informed that the stolen property was possibly in defendant Wiak's car, they had no idea where Wiak or Bukoski were or when they would return. They were therefore faced with the alternatives of immobilizing and searching the car or waiting for a warrant. The latter choice was a risk since the car could have been moved before the warrant was secured. Even though the police knew who owned the car and probably could have found Wiak after a warrant was obtained, the merchandise in question could be removed easily in the interim. To prevent this from happening, the police would have had to put the car under surveillance until the warrant was obtained. Under the circumstances, the police acted reasonably in immobilizing the car. It was not practical to obtain a warrant as they were presented with a fleeting opportunity to search.

Shortly after the car was immobilized and before it was removed to the stationhouse the defendants were arrested. Before they were arrested they had been seen near the car, and one of them had been seen removing a bundle from the back seat and placing it in the trunk. While the defendants had left the car parked, locked and unoccupied on the street, it is apparent that they were still in the "presence" of the car—they were arrested a short distance from the car, and it is manifest from their activities in the interim that they intended

to return to the car and drive off. To distinguish this case from the *Carroll-Chambers* situations based on the fact that defendants were arrested outside the car and a short distance from it would be to draw a purposeless distinction.

For constitutional purposes, there is no difference between this case and those cases, and there is no difference between seizing the car and searching it at the stationhouse without a warrant and carrying out an immediate search at the scene. *Given probable cause to search,* either course is reasonable. *Chambers v Maroney,* 399 US 42, 52; 90 S Ct 1975, 1981; 26 L Ed 2d 419, 428 (1970). Other courts faced with similar situations have reached the same conclusion. *Castaldi v United States,* 453 F2d 506 (CA 7, 1971); *United States v Ortiz,* 331 F Supp 514 (D PR, 1971); *People v Munoz,* 21 Cal App 3d 805; 98 Cal Rptr 758 (1971); *State v Birdwell,* 6 Wash App 284; 492 P2d 249 (1972).

Defendants' second allegation is that the trial court erred when it failed to instruct on lesser included offenses supported by the evidence even though no request or objection was made. They rely on *People v Lemmons,* 384 Mich 1 (1970), to argue that a judge has a duty to so instruct even in the absence of a request. The trial judge instructed the jury that it could find either defendant "guilty as charged" or "not guilty as charged". This Court has consistently held that *Lemmons* requires reversal only where (1) there is no request for an instruction on a lesser included offense; (2) there is evidence to support such a conviction so that if requested, the charge would have had to be given; and (3) the court affirmatively excludes consideration of lesser offenses. See, *e. g., People v Membres,* 34 Mich App 224 (1971); *People v*

*Brown,* 32 Mich App 262 (1971). There was no affirmative exclusion in the instant case and consequently no error.

Defendants' final allegation of error is that the trial court erred when it considered their juvenile records in setting sentence. This, they argue, violated MCLA 712A.23; MSA 27.3178(598.23). In essence, they contend that *People v Coleman,* 19 Mich App 250 (1969), and those cases which follow it have misinterpreted the word "evidence" as it is used in the statute. Recently a panel of this Court reexamined *Coleman* and held that the word "evidence" should be given a broad reading in accord with the purposes of the statute. *People v McFarlin,* 41 Mich App 116 (1972). We adhere to the reasoning of this later case. It was error to consider defendants' juvenile records when sentencing them.

Affirmed in part, reversed in part and remanded for resentencing.

All concurred