PEOPLE v JEFFERY WOODARD

PEOPLE v CRAIG WOODARD

Docket Nos. 50898, 50939. Submitted February 3, 1981, at Lansing.—
Decided November 30, 1981.

In a joint trial, Jeffery and Craig Woodard were convicted of
armed robbery and felony-firearm; Craig Woodard was also
convicted of first-degree criminal sexual conduct, Recorder's
Court of Detroit, Leonard Townsend, J. Both defendants ap-
pealed and the appeals were consolidated. *Held:*

1. Both defendants claimed that evidence seized in two
searches was improperly admitted. Four men held up Logan's
Hideaway Lounge in Detroit. In the course of the robbery one
of the men, later identified as Craig Woodard, raped a barmaid.
One of the participants in the robbery, James Cottrell, was
apprehended shortly thereafter by the police. Cottrell, who
later testified against the defendants in exchange for a light
sentence, then led the police to the Woodard residence. After
announcing themselves as police, the team of officers heard
people running around inside the house. The officers forced
open the side door. Jeffery and Craig Woodard were then taken
into custody by the police, who were acting without an arrest
or search warrant. The police took the Woodards downtown
and secured a search warrant for the Woodard residence. After
searching the Woodard home, the police obtained and executed
another search warrant. Each search produced various items of
incriminating evidence.

Defendants did not raise the issue at trial. Review of the
issue of admissibility of evidence based on a constitutional
challenge raised for the first time on appeal requires a two-fold
inquiry: 1) was the evidence decisive; and 2) was the evidence
erroneously admitted. The evidence seized supplied important

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 601-604, 737.
[2] 68 Am Jur 2d, Searches and Seizures §§ 35, 44, 56.
[3] 5 Am Jur 2d, Arrest § 116.
   29 Am Jur 2d, Evidence § 546.

corroboration and exclusion could make a difference in a new trial.

A nonconsensual entry into a suspect's home by the police without a warrant to make a routine felony arrest is prohibited by the Fourth Amendment, in the absence of exigent circumstances. There were no exigent circumstances. The arrests were illegal.

Evidence against a defendant emanating from an illegal arrest of that defendant should be suppressed by the trial court where the evidence was procured by an exploitation of the illegality of the arrest. However, where the evidence was procured by means sufficiently distinguishable from the illegal arrest to be purged of the primary taint it should not be suppressed. The affidavits used to obtain the search warrants contained no information procured by the exploitation of the illegality of the arrests. The evidence seized was not the fruit of a poisonous tree and was properly admitted.

2. Defendant Jeffery Woodard's other allegations were without merit.

Affirmed.

1. EVIDENCE — APPEAL — CONSTITUTIONAL LAW.

Review of the issue of admissibility of evidence based on a constitutional challenge raised for the first time on appeal requires a two-fold inquiry: 1) was the evidence decisive; and 2) was the evidence erroneously admitted.

2. SEARCHES AND SEIZURES — ARREST.

A nonconsensual entry into a suspect's home by the police without a warrant to make a routine felony arrest is prohibited by the Fourth Amendment, in the absence of exigent circumstances.

3. EVIDENCE — ILLEGAL ARRESTS — TAINTED EVIDENCE.

Evidence against a defendant emanating from an illegal arrest of that defendant should be suppressed by the trial court where the evidence was procured by an exploitation of the illegality of the arrest; however, where the evidence was procured by means sufficiently distinguishable from the illegal arrest to be purged of the primary taint it should not be suppressed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Anne B. Wetherholt*

(in *Jeffery Woodard*), and *Timothy A. Baughman*
(in *Craig Woodard*), Assistant Prosecuting Attor-
neys, for the people.

*Raymond L. Miller,* for defendant Jeffery Wood-
ard.

*Roman S. Karwowski,* for defendant Craig Wood-
ard.

Before: DANHOF, C.J., and R. M. MAHER and
BEASLEY, JJ.

R. M. MAHER, J. Defendants Jeffery and Craig
Woodard were convicted of armed robbery, MCL
750.529; MSA 28.797, and possession of a firearm
in the commission of a felony, MCL 750.227b; MSA
28.424(2), in a joint jury trial. Defendant Craig
Woodard was also convicted of first-degree crimi-
nal sexual conduct, MCL 750.520b; MSA 28.788(2).
They appeal as of right.

Around 4 p.m. on November 9, 1979, four men
held up Logan's Hideaway Lounge in Detroit,
Michigan. In the course of the robbery one of the
men, later identified as Craig Woodard, raped a
barmaid. One of the participants in the robbery,
James Cottrell, was apprehended shortly thereaf-
ter by the police. Cottrell, who later testified
against the defendants in exchange for a light
sentence, then led the police to the Woodard resi-
dence. After announcing themselves as police, the
team of officers heard people running around in-
side the house, prompting the officers to force open
the side door. Jeffery and Craig Woodard were
then taken into custody by the police, who were
acting without an arrest or search warrant. The
police took the Woodards downtown and secured a
search warrant for the Woodard residence. After

searching the Woodard home, the police obtained and executed another search warrant. Each search produced various items of incriminating evidence.

## I

Defendant Craig Woodard raises only one claim of error on appeal, contending that the trial court erred in admitting evidence produced by the two searches. Defendant Jeffery Woodard also contends that this evidence was erroneously admitted.

## A

The prosecution's initial response is that defendants' failure to object to the admission of this evidence at trial precludes appellate review of the propriety of its admission. We believe that the Court of Appeals in *People v Bukoski,* 41 Mich App 498; 200 NW2d 373 (1972), enunciated the correct standard for determining the effect of failure to challenge admission of evidence at trial:

"Where a defendant raises a constitutional question for the first time on appeal, we must ask two questions: (1) was the evidence decisive, and (2) was the evidence erroneously admitted into evidence." *Id.,* 501.

The evidence seized pursuant to the search warrants included numerous items taken from the robbery victims. These items supplied important corroboration of the testimony by the robbery victims and accomplice Cottrell linking defendants to the crime. Under these circumstances we must conclude that the exclusion of this evidence "could make a difference in a new trial". *Bukoski, supra,* 501. Consequently, we must consider the validity of the two searches.

B        :

Defendants argue that their arrest was illegal, and that therefore the evidence obtained in the subsequent searches must be excluded as "fruit of the poisonous tree". We address first the legality of the arrest.

In *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the Supreme Court held that, absent exigent circumstances, a warrantless, nonconsensual entry into a suspect's home to make a routine felony arrest is prohibited by the Fourth Amendment. Since no exigent circumstances existed in the present case, the warrantless arrest of defendants Jeffery and Craig Woodard was clearly unconstitutional under *Payton.* The prosecution, however, contends that the *Payton* holding "is not retroactive", and that the warrantless arrest of both defendants was therefore "proper". We cannot agree. The *Payton* Court did not announce a new rule of law but merely clarified a controversial area of Fourth Amendment doctrine. *Payton* did not overrule any longstanding precedents, nor did the Court set forth a new prophylactic rule, as in *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961), or *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Consequently, retroactivity analysis is inappropriate.

Moreover, even if we lacked the mandate of the *Payton* decision, we would be constrained to hold that the instant arrests violated the Fourth Amendment. Prior to *Payton,* five of the seven United States Courts of Appeals that had considered the question had expressed the opinion that

such arrests are unconstitutional.[1] As early as 1974, the Sixth Circuit had held that such arrests are *"per se* unreasonable unless 'exigent circumstances' justify the failure to obtain a warrant".[2] It would defeat the deterrent purposes of the exclusionary rule to permit the police to ignore the clear command of the local Federal Circuit Court of Appeals. Therefore, even if *Payton* had never been decided, we would nonetheless hold, as a matter of first impression, that these arrests were illegal.

## C

Defendants argue that their arrest was illegal and that therefore the evidence obtained in the two searches must be suppressed as "fruit of the poisonous tree". Although we have concluded that the warrantless arrest was illegal, evidence obtained in the subsequent searches need not be suppressed unless this evidence "was procured by an exploitation of the illegality of the arrest [and not] by means sufficiently distinguishable to be purged of the primary taint". *People v Brooks,* 70 Mich App 7, 11; 245 NW2d 384 (1976), *rev'd on*

---

[1] "Compare *United States v Reed,* 572 F2d 412 (CA 2, 1978), cert den sub nom *Goldsmith v United States,* 429 US 913; *United States v Killebrew,* 560 F2d 729 (CA 6, 1977); *United States v Shye,* 492 F2d 886 (CA 6, 1974); *United States v Houle,* 603 F2d 1297 (CA 8, 1979); *United States v Prescott,* 581 F2d 1343 (CA 9, 1978); *Dorman v United States,* 140 US App DC 313; 435 F2d 385 (1970), with *United States v Williams,* 573 F2d 348 (CA 5, 1978); *United States ex rel Wright v Woods,* 432 F2d 1143 (CA 7, 1970), *cert den* 401 US 966. Three other Circuits have assumed without deciding that warrantless home arrests are unconstitutional. *United States v Bradley,* 455 F2d 1181 (CA 1, 1972); *United States v Davis,* 461 F2d 1026 (CA 3, 1972); *Vance v North Carolina,* 432 F2d 984 (CA 4, 1970). And one Circuit has upheld such an arrest without discussing the constitutional issue. *Michael v United States,* 393 F2d 22 (CA 10, 1968)." *Payton v New York,* 445 US 573, 575 n 4.

[2] *United States v Shye,* 492 F2d 886, 891 (CA 6, 1974). See also *United States v Killebrew,* 560 F2d 729 (CA 6, 1977).

*other grounds* 405 Mich 225; 274 NW2d 430 (1979).[3] It is therefore necessary to examine each warrant in order to determine whether either was obtained through the use of information acquired in the course of an illegal arrest.

Generally, "when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, '[i]f the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted'". *United States v Williams,* 633 F2d 742, 745 (CA 8, 1980) (citation omitted). The Sixth Circuit has taken a contrary position, insisting on suppression where tainted information comprises more than a very minor portion of the information justifying issuance of a warrant,[4] or requiring exclusion where there is doubt in regard to whether sufficient probable cause would have existed if the tainted information had not been included in the affidavit.[5]

We need not choose between these approaches at this time, since the affidavits relied upon in the instant case contained no information obtained in the course of the unlawful arrests. Under these

___

[3] See also *People v Jones,* 66 Mich App 223; 238 NW2d 813 (1975), and *Wong Sun v United States,* 371 US 471, 488; 83 S Ct 407, 417; 9 L Ed 2d 441, 455 (1963).

[4] *United States v Langley,* 466 F2d 27 (CA 6, 1972).

[5] *United States v Nelson,* 459 F2d 884, 894-895 (CA 6, 1972) (Miller, J., *concurring*). Edwards, J., concurred in Judge Miller's analysis of this issue. *Id.,* 889. See also *United States v Griffin,* 502 F2d 959 (CA 6, 1974) *cert den* 419 US 1050; 95 S Ct 626; 42 L Ed 2d 645 (1974). In *Griffin,* police made an illegal entry to "secure" defendant's premises while a search warrant was obtained. Although the affidavit contained no information obtained in the illegal entry, the Court believed that suppression of evidence obtained in the subsequent search was necessary in order to deter such unlawful intrusions.

circumstances we believe that the evidence obtained in the two searches was not procured "by an exploitation of [the] illegality [of the arrests]",[6] and that therefore it need not be suppressed as fruit of a poisonous tree.[7]

## II

Defendant Jeffery Woodard raises five additional allegations of error, which we shall address in order. First, defendant contends that the trial court erred in failing to dismiss the case against him after a prosecution witness, James Cottrell, testified that defendant was not present at the robbery. Defendant essentially claims that there was insufficient evidence linking him to the crime. Cottrell, defendant's accomplice, had testified earlier that defendant had participated in the robbery. Robbery victim David Hartfield also identified defendant as one of the robbers. Moreover, substantial corroborative evidence was presented by the prosecution. We find that there was sufficient evidence for the jury to reasonably infer defendant's guilt beyond a reasonable doubt.

Defendant next contends that the trial court erred in admitting a weapon into evidence inasmuch as there was insufficient testimony to establish that the weapon was involved in the robbery.

Accomplice James Cottrell testified that one of the robbers had a "carbine". An officer testified

---

[6] Wong Sun, supra.

[7] But cf. Griffin, supra. The Griffin rationale might require suppression in the case at bar. However, we believe that Griffin involved a much more flagrant and wilful disregard of constitutional rights by the police. We note that in the present case the police were acting under an arrest statute that had not yet been declared unconstitutional.

that the challenged exhibit was one of the weapons found in the Woodards' basement, and referred to the exhibit as a "survival rifle". The trial court, upon viewing the exhibit, admitted it into evidence on the ground that Cottrell had testified that one of the robbers had a "carbine".

Although there was perhaps an inadequate foundation for the admission of this evidence, we believe that its admission could not have affected the verdict of a rational jury. Consequently, we find that any error in admitting this exhibit was harmless beyond a reasonable doubt.

Defendant next contends that the trial court erred in denying his request to instruct the jury that "it is not against the law for people to have guns in their house". A prosecution witness had testified that a quantity of weapons had been discovered in the Woodard residence, and defendant sought this instruction to remove any prejudice caused by this testimony.

We feel that such an instruction would have served only to confuse the jury. Defendants were charged with using several of the weapons found in the house to commit the armed robbery. They were not charged with any crimes arising out of possession of any of the other weapons. We also observe that the requested instruction is inaccurate and misleading, since it *is* unlawful to possess a sawed-off shotgun or an unregistered weapon, and defendants' arsenal included such weapons. Under these circumstances we cannot conclude that the trial court erred in refusing this instruction.

Defendant also contends that the trial court

erred by failing to give an adequate cautionary instruction on the nature of accomplice testimony. We emphatically disagree. Although neither defense counsel requested such an instruction, the court gave the following instruction *sua sponte:*

"Now, Mr. Cottrell has testified before you, and he stated that he was a participant, which makes him one of the perpetrators; if you find there was an offense, he would be an undisputed perpetrator of this particular offense. Now, when you are sifting the testimony of an undisputed perpetrator, pay very close attention to his testimony and accept it with great care and caution. When you are considering the testimony of a perpetrator, determine for yourself if his testimony is corroborated by the testimony of any other witness, whether or not he is biased or prejudiced against any of the parties in the case, also consider if the perpetrator has been offered immunity or given a reward for his testimony. If his testimony makes sense to you and if it is corroborated by the testimony of other witnesses, you may accept his testimony the same as you can the testimony of any other witness. Accomplice testimony is proper and you may convict on the testimony alone of a perpetrator if you believe his testimony. If you do not believe his testimony, if you find it unbelievable, then you may reject it the same as you would the testimony of any other witness."

Under these circumstances, we find that the court's cautionary instruction satisfied the requirements of *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974).

Defendant finally contends that the felony-firearm statute, MCL 750.227b; MSA 28.424(2), in unconstitutional. This claim is without merit. *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979).

Affirmed.