PEOPLE v RAYBON

Docket No. 55255. Submitted May 5, 1982, at Lansing.—Decided May
3, 1983. Leave to appeal applied for.

Bernard Raybon was convicted of armed robbery and, on his plea
of guilty, of being a second-felony offender, Jackson Circuit
Court, Gordon W. Britten, J. Defendant appealed. *Held:*

1. Defendant's conviction following a second trial was not
violative of the prohibition against double jeopardy. Defen-
dant's first trial ended in a mistrial over defendant's objection
when a witness who had identified defendant as the perpetrator
suffered a heart attack before any cross-examination had taken
place. The witness's doctor did not know when or if the witness
could testify again. A mistrial was properly declared because of
manifest necessity.

2. The court erred in admitting certain evidence found as a
result of a search without a warrant. A search without a
warrant is unreasonable per se unless it can be justified under

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Witnesses §§ 464, 465.

[2] 68 Am Jur 2d, Searches and Seizures § 37 *et seq.*

[3] 68 Am Jur 2d, Searches and Seizures §§ 23, 44, 88.

Observation of objects in "plain view"—Supreme Court cases. 29 L
Ed 2d 1067.

[4] 68 Am Jur 2d, Searches and Seizures § 44.

[5] 68 Am Jur 2d, Searches and Seizures § 46 *et seq.*

[6] 29 Am Jur 2d, Evidence §§ 371, 372, 415.

"Fruit of the poisonous tree" doctrine excluding evidence derived
from information gained in illegal search. 43 ALR3d 385.

Admissibility of evidence as to extrajudicial or pretrial identifica-
tion of accused. 71 ALR2d 449.

Modern status of rule governing admissibility of evidence obtained
by unlawful search and seizure. 50 ALR2d 531.

[7] 21 Am Jur 2d, Criminal Law § 314.5.

21A Am Jur 2d, Criminal Law § 746 *et seq.*

29 Am Jur 2d, Evidence §§ 371, 371.2, 372.

Accused's right to counsel under Federal Constitution—Supreme
Court cases. 18 L Ed 2d 1420.

Accused's right to assistance of counsel at or prior to arraignment.
5 ALR3d 1269.

one of the exceptions to the search warrant requirement. Testimony showing that the homeowner opened the door without any advance notice that three police officers with drawn guns were on her doorstep and that she stepped back after an officer asked if the police could enter does not establish consent negating the requirement of a search warrant.

3. Evidence of an on-the-scene identification made subsequent to an arrest without a warrant, without probable cause, and for the purpose of conducting the on-the-scene identification should be suppressed as the fruit of an illegal arrest. Defendant was arrested and taken to the scene of the crime for purposes of identification. Evidence of that identification should have been suppressed.

Reversed and remanded with instructions.

1. CRIMINAL LAW — MISTRIAL — MANIFEST NECESSITY.

Manifest necessity for declaring a mistrial over defendant's objection exists where a witness suffers a heart attack after having given crucial and devastating identification testimony but before being cross-examined on that testimony where the witness's doctor cannot determine when, if ever, the witness could again testify.

2. SEARCHES AND SEIZURES — SEARCHES WITHOUT A WARRANT.

A search without a warrant is unreasonable per se unless it can be justified under one of the exceptions to the search warrant requirement.

3. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.

A search and seizure without a warrant under the plain view exception requires that: (1) the police have a lawful right to be where they are when they see the item, (2) discovery of the item is inadvertent, (3) seizure of the item is justified by exigent circumstances, and (4) the police have a reasonable basis for connecting the objects seized with the crime.

4. SEARCHES AND SEIZURES — EXIGENT CIRCUMSTANCES.

Exigent circumstances are present where immediate action is necessary to: (1) protect the police officers or other persons, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the suspect.

5. SEARCHES AND SEIZURES — CONSENT.

Testimony showing that the homeowner opened the door without any advance notice that three police officers with drawn guns were on her doorstep and that she stepped back after an officer

asked if the police could enter does not establish consent negating the requirement of a search warrant.

6. ARREST — ON-THE-SCENE IDENTIFICATION.

Evidence of an on-the-scene identification made subsequent to an arrest without a warrant, without probable cause, and for the purpose of conducting the on-the-scene identification should be suppressed as the fruit of an illegal arrest.

7. CRIMINAL LAW — ON-THE-SCENE IDENTIFICATIONS — RIGHT TO COUNSEL.

Police officers may conduct an on-the-scene identification without the presence of counsel any time promptly after the crime except where the police have very strong evidence that the person stopped is the culprit.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Chief Appellate Attorney, for the people.

*Lester O. Pollak,* for defendant.

Before: R. M. MAHER, P.J., and BRONSON and R. J. SNOW,* JJ.

R. J. SNOW, J. On September 19, 1980, defendant was convicted in a bench trial of armed robbery, contrary to MCL 750.529; MSA 28.797. After pleading guilty to being a second-felony offender, he was sentenced to 12 to 20 years imprisonment. He appeals as of right.

Defendant first argues that his trial and conviction were barred by double jeopardy. See *People v Benton,* 402 Mich 47; 260 NW2d 77 (1977). Defendant was first tried for this offense in June, 1980; this trial ended in a mistrial. On the second day of the earlier trial, a key prosecution witness suffered a heart attack while on the witness stand. This witness had just positively identified defendant as

* Circuit judge, sitting on the Court of Appeals by assignment.

one of the perpetrators of the bank robbery; she had not yet been cross-examined. After a three-week adjournment, the trial judge conducted a hearing and declared the mistrial.

Defendant argues that the trial judge abused his discretion in declaring the mistrial because there was no manifest necessity and because defendant did not consent to the mistrial. We need not address defendant's second argument because we find that manifest necessity did exist.

The evidence presented at the hearing established that the witness's doctor could not deterine when, if ever, the witness could again testify. Defense counsel vehemently opposed the prosecutor's motion for a further adjournment, arguing that such a postponement would deleteriously affect the trial court's perception of the testimony so far presented. The trial court was thus left with two alternatives—either to permit the trial to continue or to declare a mistrial.

Had the trial court adopted the first of these alternatives, defendant's right to confrontation would have been seriously abridged. The witness was one of the few witnesses who saw the bank robber's face and was actually one of the tellers from whom the money was taken. Identification testimony from such a witness must be considered "crucial and devastating". See *Dutton v Evans,* 400 US 74; 91 S Ct 210; 27 L Ed 2d 213 (1970). Defense counsel in the second trial amply demonstrated the necessity for cross-examining this witness. Immediately after the robbery, the witness did not identify defendant as one of the two robbers and was unable to give the police a detailed description of the robber's appearance or clothing. This testimony, which clearly blunted the effect of the witness's positive in-court identification, would

not have been presented at the first trial had that trial continued. Furthermore, even had this witness's testimony not been crucial or devastating, allowing a witness's testimony to stand without an opportunity for cross-examination in itself raises serious confrontation problems. *Brookhart v Janis,* 384 US 1; 86 S Ct 1245; 16 L Ed 2d 314 (1966).

Defendant next argues that evidence introduced against him at trial should have been suppressed because it was illegally seized and that his right to counsel was denied by an on-the-scene identification without counsel. On March 19, 1980, at 3:40 p.m., two men robbed the City Bank and Trust in Jackson. Witnesses at the scene saw the two men drive away from the bank in a brown car and noted the license plate number. Within five to ten minutes, the police radio broadcasted a report of the bank robbery, a description of the robbers as two armed black males, and the address to which the getaway car was registered.

Immediately after this broadcast, at least seven police officers drove to the address. Three of the officers proceeded directly to the front door with guns drawn while at least three other officers went to the back door. Officer Conant, one of the three officers at the front door, knocked and rang the doorbell. Mrs. Deborah Johnson, the owner of the house, answered the door. Officer Conant later testified that the following exchange then occurred:

"I asked her if she owned a red Fairmont. She stated that she did. I told her that her license number had just been reported as being used in a bank robbery, and she gave me a look of surprise, and I asked her if I could come in. She stepped back and I followed her into the house. Detective Smith and Choate followed me in the front door following her."

The officers followed Mrs. Johnson into her living room. Within 10 to 15 seconds, defendant and codefendant Briston entered the room. After some discussion with Mrs. Johnson, Officer Conant checked with the officers still outside and discovered that the getaway car was in the garage. Upon this discovery, the officers searched the two men for weapons, handcuffered them, placed them in the backseats of two police cars, and sent them back to the City Bank and Trust for the on-the-scene identification.

Immediately after sending defendant and codefendant away, the police searched the entire house to "see if any additional suspect or any other person" was in the house. In one of the bedrooms, the officers saw money wrappers, cash register tapes, and rubberbands lying on the bed. These items were later seized pursuant to a search warrant. Under the same search warrant, the police searched dresser drawers and closets and looked between the mattresses in the same room. They found money, including bait money from the bank robbery, a felt hat, a black coat, and a revolver.

A search without a warrant is unreasonable per se unless it can be justified under one of the exceptions to the search warrant requirement. *Stoner v California,* 376 US 483; 84 S Ct 889; 11 L Ed 2d 856 (1964). The prosecution contends that the search of the bedroom was justified under the plain view exception.

A plain view search and seizure is justified only when four requirements are met. First, the police must have a lawful right to be where they are when they see the item. *People v Dugan,* 102 Mich App 497; 302 NW2d 209 (1980). Second, the discovery of the item must have been inadvertent. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022;

29 L Ed 2d 564 (1971). Third, seizure of the item is justified only by exigent circumstances. *People v Myshock,* 116 Mich App 72; 321 NW2d 849 (1982). Finally, the police must have a reasonable basis for connecting the objects seized with the crime. *People v Secrest,* 413 Mich 521; 321 NW2d 368 (1982).

The crucial inquiry in this case focuses on the first requirement. The prosecution argues that the police were lawfully in the house through hot pursuit.

"Hot pursuit" is a form of "exigent circumstances". *Warden v Hayden,* 387 US 294; 87 S Ct 1642; 18 L Ed 2d 782 (1967). Exigent circumstances are present where immediate action is necessary to: (1) protect the police officers or other persons, (2) prevent the loss or destruction of evidence, or (3) prevent the escape of the suspect. *People v Anthony,* 120 Mich App 207; 327 NW2d 441 (1982).

In this case, it cannot be said that the police had to enter Mrs. Johnson's house to prevent the escape of the two suspects or destruction of evidence taken in the robbery, or to protect anyone from the suspects. At the time the police entered the house, they knew of nothing that even suggested the suspects were in the house. The police did not follow the suspects to the robbery scene but instead went directly to the house. In addition, the police arrived at the house in pursuit of a lead (the getaway car was registered to that address) and not in pursuit of the suspects. This was amply demonstrated by the fact that the police never checked to see whether the getaway car was anywhere near the house until sometime after they had entered the house, although, given the short time since the robbery (5 to 10 minutes) and the distance from the robbery scene (1 mile), this

would have been the logical investigatory step if the police thought the suspects might be in the area.

Two recent cases support our conclusion that, because the police had no reason to believe the suspects were in Mrs. Johnson's house, they lacked exigent circumstances to enter it. In *People v Anthony, supra,* the police were led by a witness to the house of the supposed armed robbers within 15 to 30 minutes of the robbery. The Court noted that the police had no information that anyone had recently entered the house and distinguished the case from the situation in *Warden v Hayden, supra,* where the officers' actions "were not directed to a house where the suspect was living but rather where he had entered moments before". *People v Anthony, supra,* p 212. In *People v Jeffery Woodard,* 111 Mich App 528; 314 NW2d 680 (1981), this Court also declined to find exigent circumstances justifying entry of a house even though the police were led to the defendant's residence by an apprehended suspect shortly after the robbery, and even though the police heard running inside the house immediately after they announced their presence.

Neither do we find that the officers had the right to be in the house through consent. In *People v Carpenter,* 120 Mich App 574; 327 NW2d 523 (1982), four police officers came to the defendant's apartment with their revolvers drawn, announced themselves, and requested admittance. The defendants opened the door, looked at the police, closed the door, removed the security chain lock, and then opened the door for the police to enter. This Court found consent, noting that the defendants were aware that the police were outside the building even before the police knocked on the door,

because the officers had been throwing stones at the windows to awaken the residents, and one of the defendants looked out his window and informed the other that the police had arrived.

These facts are not present here. The prosecution must show by clear and convincing evidence that, under the totality of the circumstances, the consent was freely and voluntarily given. *Schneckloth v Bustamonte,* 412 US 218; 93 S Ct 2041; 36 L Ed 2d 854 (1973); *People v Shaw,* 383 Mich 69; 173 NW2d 217 (1970). Unlike *Carpenter,* the police testimony in this case merely showed that Mrs. Johnson opened the door without any advance notice that three police officers with drawn guns were on her doorstep and that she stepped back after an officer asked if the police could enter. Under these circumstances, we cannot find even tacit consent to the entry.

We therefore must conclude that the police lacked the right to be at Mrs. Johnson's house when they saw the items in plain view. Since the original search formed the basis for the warrant and subsequent search, all items seized pursuant to the warrant must be suppressed as fruit of the poisonous tree. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). Because such critical evidence as the bait money and revolver was not suppressed at defendant's trial, defendant's conviction must be reversed.

Although we are reversing defendant's conviction on this ground, we must determine whether defendant's on-the-scene identifications, and possibly the later in-court identifications, should also have been suppressed because this issue may recur on retrial. Michigan allows a prompt, on-the-scene identification without counsel. *People v Anderson,* 389 Mich 155, 187, fn 23; 205 NW2d 461 (1973).

One of the reasons for permitting this procedure is to allow the police to know whom to arrest. *People v Martin,* 42 Mich App 236; 201 NW2d 284 (1972). The issue in this case, however, is whether the intent to conduct such an on-the-scene identification justifies arresting the suspect without probable cause.

The police testimony in this case established that the police searched defendant and codefendant Briston for weapons, handcuffed them, and took them in the rear seats of separate police cruisers to the scene of the robbery for identification. Furthermore, the officers informed other officers back at the bank that defendant and his codefendant were "in custody". On these facts, we can conclude only that defendant and his codefendant were under arrest: "the *sine qua non* for an arrest or 'seizure' of the person of a defendant is a significant restraint of freedom, an intrusion more severe that a *Terry*-type 'stop and frisk' ". *People v Emanuel,* 98 Mich App 163, 172-173; 295 NW2d 875 (1980), *lv den* 414 Mich 871 (1982). See also *Dunaway v New York,* 442 US 200; 99 S Ct 2248; 60 L Ed 2d 824 (1979); *People v Gonzales,* 356 Mich 247, 253; 97 NW2d 16 (1959).

However, the police themselves fully admitted that they did not have probable cause to arrest the men:

"*Q.* And, what was your reason for having the officers take them back to the bank for field identification?

"*A.* Well I didn't—I didn't know, and there was no way to know at this point whether they were or were not the persons responsible for the bank robbery. It's been my experience that the quickest way to solve that problem is to take them back immediately for field identification, as long as the time distance span is reasonable.

* * *

"*Q.* Mr. Conant, you didn't have any descriptions of any additional suspects other than Mr.—the description that's fit Mr. Raybon and Mr. Briston at the time you entered the house, is that right?

"*A.* The description I had even at that point was vague, and although they did match and meet the descriptions as I could visualize myself, Mr. Raybon, Mr. Briston, they would also match many people."

Failure to conclude that the police lacked probable cause to arrest on these facts would allow the police to search, handcuff, and transport any black male in the vicinity. Had 20 other black males entered the Johnson house in defendant's wake, nothing but a requirement of probable cause would have prevented the police from taking all 20 back to the bank in handcuffs. We must, therefore, conclude that defendant's arrest was without probable cause (see MCL 764.15[1][d]; MSA 28.874[1][d]), and that the subsequent on-the-scene identifications must be suppressed as fruit of the poisonous tree. *Wong Sun v United States, supra.*[1]

This case may be distinguished from the type of situation that occurred in *People v Starks,* 107 Mich App 377; 309 NW2d 556 (1981), *lv den* 413 Mich 901 (1982), and *People v Curtis Williams,* 57 Mich App 612; 226 NW2d 584 (1975). In both these cases, the suspects were merely detained at the scene of the crime until the witnesses returned to identify them. The extent of the restraint on the defendant's liberties simply did not rise to the level present here. Thus, since an arrest was not

---

[1] We note that even if the police had probable cause to arrest, in the absence of exigent circumstances or consent, this arrest still would have been illegal. *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980).

made, probable cause was not required for the detention.

We realize that our resolution of this issue may place the police in an untenable situation, depending on the interpretation given other aspects of the on-the-scene identification procedure. In *People v Dixon,* 85 Mich App 271, 280; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979), this Court ruled that a defendant has the right to have counsel present even in a prompt on-the-scene identification if the "police officer has more than a mere suspicion that the person in custody is wanted for the crime * * *". This test has since been refined to require counsel "unless the police lack probable cause for a formal arrest". *People v Purofoy,* 116 Mich App 471, 486; 323 NW2d 446 (1982) (R. M. MAHER, J., *dissenting).* Conjunction of both the *Dixon* tests and the requirement of probable cause before the police may arrest the suspect to obtain the on-the-scene identification would effectively eliminate any on-the-scene identifications where the police must arrest the defendant before the identification.

In light of the policy reasons favoring the on-the-scene identifications, we believe this result would be too severe. Such identifications are conducted to avoid detention of an innocent suspect[2] and to permit an identification while the image of the criminal is still fresh in the victim's mind. *Russell v United States,* 133 US App DC 77, 80-81; 408 F2d 1280, 1283-1284 (1969), *cert den* 395 US 928; 89 S Ct 1786; 23 L Ed 2d 245 (1969). In addition, where the victim promptly states that the suspect is not the criminal, the police investi-

---

[2] Even where a suspect has been properly arrested on probable cause, this consideration is still relevant. Exoneration at the identification could well eliminate the need for the trip to the police station and all that this would entail.

gation may resume immediately while the lead is still fresh.

This dilemma could be eliminated by following *People v Coward,* 111 Mich App 55; 315 NW2d 144 (1981), which rejected the *Dixon* test and permitted prompt, on-the-scene identifications without counsel under any circumstance. Unfortunately, *Coward* fails to account for the inherent suggestiveness of the on-the-scene identification:

"Unquestionably, confrontations in which a single suspect is viewed in the custody of the police are highly suggestive. Whatever the police actually say to the viewer, it must be apparent to him that they think they have caught the villain. Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty. There may also be unconscious or overt pressures on the witness to cooperate with the police by confirming their suspicions. And the viewer may have been emotionally unsettled by the experience of the fresh offense." *Russell v United States, supra,* p 1284.

Given these competing considerations, we believe that the better reasoned approach is that taken in *People v Dana Turner,* 120 Mich App 23; 328 NW2d 5 (1982). *Turner* requires counsel for identifications "where the police have very strong evidence that the person stopped is the culprit". 120 Mich App 36.[3] Such "strong evidence" exists, for example, where a suspect has confessed, matches a highly distinctive personal description, or is found with distinctive evidence of the crime. Another example was found in *People v Patskan,* 387 Mich 701; 199 NW2d 458 (1972), where the police pursued a suspect directly from the scene of the crime to a nearby field; the close proximity in

[3] A second consideration mentioned in *People v Turner* requiring counsel is irrelevant here.

time and place to the scene of the crime presented strong evidence that the suspect followed by the police was the criminal.

This approach also eliminates the possibility of a valid arrest automatically preventing a prompt, on-the-scene identification without counsel. As long as the probable cause necessary to arrest a suspect does not rise to the level of "strong evidence" cited in *Turner,* the police may arrest a suspect and still conduct the identification.

Because we have concluded that the on-the-scene identifications of defendant must be suppressed on retrial, we must also determine whether subsequent in-court identifications (by witnesses Kusiak, Wasilew, and Hock) must also be suppressed. The trial court found no illegality in the on-the-scene identifications and so had no reason to inquire after an independent basis for the in-court identifications. On retrial, we therefore direct the trial court to conduct an evidentiary hearing pursuant to *People v Kachar,* 400 Mich 78; 252 NW2d 807 (1977), to determine whether such an independent basis exists.

Reversed and remanded.

R. M. MAHER, P.J., concurred in the result only.