## PEOPLE v WALKER

Docket No. 66312. Submitted June 6, 1983, at Detroit.—Decided November 7, 1983. Leave to appeal denied, 418 Mich 938.

Dwayne T. Walker was arrested and charged with carrying a concealed weapon. The Recorder's Court of Detroit, David P. Kerwin, J., granted defendant's motion to suppress the evidence, finding that defendant's Fourth Amendment rights protecting him from unreasonable searches and seizures had been violated. The people appealed by leave granted. *Held:*

The police stopped defendant three days after an armed robbery had occurred because they allegedly thought he fit the description of one of the armed robbers. After stopping defendant, the police discovered that he was carrying a pistol without having a permit to do so. The police did not have a reasonable suspicion that defendant had committed the armed robbery. The armed robbery had been committed three days earlier, the description of the robbers was so general that many people in the area would fit it, and the description of the clothing the robber had been wearing did not match the clothing defendant was wearing when stopped. The trial court did not clearly err in finding that the police did not have even a reasonable suspicion to believe that defendant had committed the armed robbery three days earlier.

Affirmed.

1. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Eᴠɪᴅᴇɴᴄᴇ — Aᴘᴘᴇᴀʟ.

The Court of Appeals will reverse a trial court's decision following a suppression hearing only if it is clearly erroneous.

2. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Sᴇᴀʀᴄʜᴇs ᴀɴᴅ Sᴇɪᴢᴜʀᴇs — Sᴇᴀʀᴄʜ Wɪᴛʜᴏᴜᴛ Wᴀʀʀᴀɴᴛ.

A search without a warrant is per se unreasonable unless it can

Rᴇғᴇʀᴇɴᴄᴇs ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs
[1] 4 Am Jur 2d, Appeal and Error § 166.
[2] 68 Am Jur 2d, Searches and Seizures § 35.
[3] 5 Am Jur 2d, Arrest § 24.
　68 Am Jur 2d, Searches and Seizures § 37.

be justified under one of the exceptions to the search warrant requirements.

3. CRIMINAL LAW — DETENTION OF SUSPECTS — PROBABLE CAUSE.

Police may detain a suspect under certain circumstances if the facts known to the police officers would justify the belief of a person of reasonable caution that the action taken was proper even though the police did not have probable cause to arrest; the scope of the detention must be justified by the amount of suspicion, *i.e.,* the encounter must be brief, the suspect must not be moved or asked to move more than a short distance, physical searches are permitted only to the extent necessary to protect the police officers involved during the encounter, the suspect must be free to leave after a short time and to decline to answer the questions put to him, and the police must have a particularized and objective basis for suspecting that particular person.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *John A. Scavone,* Assistant Prosecuting Attorney, for the people.

Defender Office—Legal Aid & Defender Association of Detroit (by *Charles E. Rutledge),* for defendant.

Before: D. F. WALSH, P.J., and BEASLEY and D. L. SULLIVAN,* JJ.

D. L. SULLIVAN, J. On April 19, 1982, the trial court granted defendant's motion to suppress seized evidence. He had been charged with carrying a concealed weapon. MCL 750.227; MSA 28.424. The prosecution appeals by leave granted.

On January 27, 1982, three men committed an armed robbery at a home on Prairie Street in Detroit. One of them was described as being black, 23 or 24, 5′9″, medium build, with a stocking mask

* Circuit judge, sitting on the Court of Appeals by assignment.

over his face, a beige skull cap, a beige three-quarter length coat with a fur collar, and carrying a sawed-off shotgun. Three days later, at about 8 p.m., two Detroit police officers were driving an unmarked police car when they saw defendant and another man walking on the sidewalk in the same block as the robbery. Defendant was wearing a fur-lined brown waist-length coat.[1] Believing that he fit the description of one of the three robbers, the police showed their badges and asked defendant to stop. He complied. However, he refused to take his hands out of his pockets despite being asked to do so. When one of the police officers shined his flashlight on defendant, he saw a gun sticking out of one of his pockets. The police officers immediately confiscated the gun and arrested defendant. Nothing in the record tells us whether or not defendant was ever charged with armed robbery.

This Court will reverse a trial court's decision following a suppression hearing only if it is clearly erroneous. *People v Dunlap,* 82 Mich App 171; 266 NW2d 637 (1978). In addition, a search without a warrant is per se unreasonable unless it can be justified under one of the exceptions to the search warrant requirements. *Stoner v California,* 376 US 483; 84 S Ct 889; 11 L Ed 2d 856 (1964); *People v Raybon,* 125 Mich App 295; 336 NW2d 782 (1983).

The prosecution argues that the search in the present case was justified as pursuant to a *Terry*-type stop. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889; 44 Ohio Ops 2d 383 (1968). It argues that the police officers had a reasonable suspicion to stop and question defendant.[2]

---

[1] The record at the suppression hearing failed to tell us defendant's age, weight, height, or race.

[2] Not all encounters between police officers and citizens have to be justified under the *Terry* standard. *People v DeBour,* 40 NY2d 210; 386 NYS2d 375; 352 NE2d 562 (1976). However, the prosecution

Even though the police do not have probable cause to arrest, under certain circumstances they may still detain a suspect if the facts known to the police officers would justify the belief of a person of reasonable caution that the action taken was proper. *People v Carter,* 96 Mich App 694; 293 NW2d 681, *lv den* 410 Mich 872 (1980). *Terry, supra,* 392 US 21; 88 S Ct 1880; 20 L Ed 2d 906, allows a limited stop if the police officer making the detention is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion". However, this right to detain is narrowly circumscribed. *People v Hamoud,* 112 Mich App 348, 351; 315 NW2d 866 (1981), *lv den* 414 Mich 959 (1982). The scope of the detention must be justified by the amount of suspicion. *Florida v Royer,* — US —; 103 S Ct 1319; 75 L Ed 2d 229 (1983). These rules are summarized as follows:

> "*Terry* and the cases following it give full recognition to law enforcement officers' need for an 'intermediate' response, short of arrest, to suspicious circumstances; the power to effect a brief detention for the purpose of questioning is a powerful tool for the investigation and prevention of crimes. Any person may, of course, direct a question to another person in passing. The *Terry* doctrine permits police officers to do far more: If they have the requisite reasonable suspicion, they may use a

concedes that it must show at least a reasonable suspicion. The higher the intrusion, the higher the burden of proof on the police. *Delaware v Prouse,* 440 US 648; 99 S Ct 1391; 59 L Ed 2d 660 (1979). In the present case, the police officers did more than just approach a citizen and ask a question. They showed their badges. *United States v Nicholas,* 448 F2d 622, 624 (CA 8, 1971). They also asked defendant to take his hands out of his pockets. The police need at least a reasonable suspicion to justify this intrusion. *Adams·v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). The trial court stated: "* * * there was no doubt from the tone of the officer's voice, as well as my interpretation of what he meant by that, is that he was going to physically take his hands out of his pockets at that point."

number of devices with substantial coercive impact on the person to whom they direct their attention, including an official 'show of authority,' the use of physical force to restrain him, and a search of the person for weapons. * * *. During such an encounter, few people will ever feel free not to cooperate fully with the police by answering their questions. *Cf.* 3 LaFave, Search & Seizure, § 9.2, pp 53-55 (1978). * * *

"The price of that effectiveness, however, is intrusion on individual interests protected by the Fourth Amendment. We have held that the intrusiveness of even these brief stops for purposes of questioning is sufficient to render them 'seizures' under the Fourth Amendment. * * * For precisely that reason, the scope of seizures of the person on less than probable cause that *Terry* permits is strictly circumscribed, to limit the degree of intrusion they cause. *Terry* encounters must be brief; the suspect must not be moved or asked to move more than a short distance; physical searches are permitted only to the extent necessary to protect the police officers involved during the encounter; and, most importantly, the suspect must be free to leave after a short time and to decline to answer the questions put to him." *Kolender v Lawson,* — US —, —; 103 S Ct 1855, 1862; 75 L Ed 2d 903, 913-914 (1983) (Brennan, J., *concurring)*. (Citations omitted.)

In addition, a proper *Terry*-type stop requires that the police have a *particularized* and objective basis for suspecting that particular person. *United States v Cortez,* 449 US 411, 417-418; 101 S Ct 690, 695; 66 L Ed 2d 621, 629 (1981).

We do not believe that the police had a reasonable suspicion that defendant had committed the armed robbery three days earlier. First, the stop occurred three days after the armed robbery. We agree with the trial court that the stop would have been justified if it had occurred within a matter of hours. However, after three days, the perpetrators

could be anywhere in the city, or even the state. Some cases have upheld *Terry*-type stops where the stop occurred within a few hours. *E.g., People v Martin,* 99 Mich App 570; 297 NW2d 718 (1980), *lv den* 413 Mich 926 (1982); *People v Ulrich,* 83 Mich App 19; 268 NW2d 269 (1978); *People v Mickelson,* 59 Cal 2d 448; 30 Cal Rptr 18; 380 P2d 658 (1963); *People v Howlett,* 1 Ill App 3d 906; 274 NE2d 885 (1971). In *People v Hunter,* 72 Mich App 191; 249 NW2d 351 (1976), *lv den* 403 Mich 854 (1978), shortly after the robbery, the defendant had been stopped a short distance from and traveling away from the scene of the crime. The description the police had was for two black men. The one was oriental looking, 5'6" to 5'7", 170 lbs., with a dark jacket and a green hat. The other was 5'9" with a medium build and dark clothing. Just a few minutes after the robbery, the police saw the defendants driving away from the scene of the crime in a car. The passenger watched the patrol car as it passed. Even though the police officers were unable to see facial characteristics or a green hat, they stopped the car. This Court upheld the search. However, the Court called it a close question. 72 Mich App 198.

In *People v Lillis,* 64 Mich App 64; 235 NW2d 65 (1975), this Court upheld a search two days after the event. The police in Grand Rapids had received information that the defendant, a motorcycle gang member from Grand Rapids, had escaped from prison. The police stopped the defendant after noticing that he fit the description and was in a car driven by members of the same motorcycle gang. In both *Hunter* and *Lillis,* the police had a better justification for the stop than in the present case.

Second, the description was too general. Many

people in the area would fit the description given.[3] The police do not have the right to stop and seize practically anyone on the street meeting such a very general description days after an armed robbery:

"[A]n individual's reasonable expectation of privacy is not subject to arbitrary invasions solely at the unfettered discretion of officers in the field." *Brown v Texas,* 443 US 47, 51; 99 S Ct 2637, 2640; 61 L Ed 2d 357, 362 (1979).[4]

In *United States v Brignoni-Ponce,* 422 US 873; 95 S Ct 2574; 45 L Ed 2d 607 (1975), the police officers had stopped the defendant while he was driving a car northbound on Interstate 5 south of San Clemente, California. The police officers stopped him because he and the two others in the car had Mexican ancestry. They stopped them to ask about their citizenship and immigration. The two passengers turned out to be illegal aliens. Despite the very modest intrusion and the well-known fact that very many illegal aliens have entered the country across the Mexican border, the Supreme Court struck down the search.

In *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), the police entered a bar armed with a search warrant for narcotics. While searching all the patrons in the bar, they found heroin in the defendant's possession. Even though the police have a legitimate need to protect themselves dur-

---

[3] In making its decision, the trial court stated: "Black male, 23 to 24, five feet nine inches and medium build would probably fit 20 to 25,000 people in the City of Detroit."

[4] In *Brown,* the United States Supreme Court unanimously ruled that the police officer involved could not detain the defendant pursuant to a statute making it a crime to fail to identify oneself to a police officer because the officer did not have a reasonable suspicion that the defendant was involved in illegal activity.

ing a search, the Supreme Court held that the frisk was illegal because the police did not have a reasonable belief that the defendant was armed.

In *People v Tebedo,* 81 Mich App 535; 265 NW2d 406 (1978), a store in Flint Township was robbed on June 26, 1975. Three days later, the police received a telephone call that a suspicious person had been spotted near the store. After looking around the neighborhood for about ten minutes, the police eventually saw the defendant standing between two buildings. After the defendant ran, the police chased after him, caught him, and hand-cuffed him. This Court ruled that the police failed to articulate specific facts that would warrant such an intrusion. In fact, this Court also stated: "A stop of even limited scope in such a situation is of dubious propriety." 81 Mich App 539.

Third, the description did not even match. The description had said a three-quarter length coat. Defendant's coat is waist length.[5] Combining these three reasons, we believe that the trial court did not clearly err in finding that the police did not have even a reasonable suspicion that defendant had committed the armed robbery three days earlier.

In making our decision, we do not believe that we are unnecessarily hampering good police work:

"Detention beyond the limits of *Terry* without probable cause would improve the effectiveness of legitimate police investigations by only a small margin, but it would expose individual members of the public to exponential increases in both the intrusiveness of the encounter and the risk that police officers would abuse their discretion for improper ends. Furthermore, regular expansion of *Terry* encounters into more intrusive

[5] Furthermore, the coat mentioned from the robbery was beige. Defendant's coat is brown.

detentions, without a clear connection to any specific underlying crimes, is likely to exacerbate ongoing tensions, where they exist, between the police and the public. See Report of the National Advisory Commission on Civil Disorders 157-168 (1968)." *Kolender, supra,* — US —; 103 S Ct 1863; 75 L Ed 2d 914 (Brennan, J., *concurring).*

Affirmed.