PEOPLE v BRYANT

Docket No. 70556. Submitted December 21, 1983, at Detroit.—Decided
June 5, 1984. Leave to appeal applied for.

Mark Bryant, Keith C. White, Charles Fly, and Sherry White
were charged in Wayne Circuit Court with breaking and enter-
ing a place of business with intent to commit a larceny.
Defendants joined in a motion to suppress the evidence, chal-
lenging the validity of their arrests and the seizure of the
evidence. The court, Charles Kaufman, J., granted the motion
and dismissed the charges against defendants. The people
appealed, and the Court of Appeals remanded the matter back
to the trial court with instructions to conduct a *de novo* inquiry
into the constitutional validity of the contested arrests of
defendants and seizure of the evidence. The trial court con-
ducted the inquiry on remand and found that the search
warrant issued in the case was invalid for lack of the affiant's
signature, that the detention of defendants without evidence of
criminal wrongdoing violated the Fourth Amendment to the
United States Constitution, and that the arrests of defendants
and the subsequent issuance of the search warrant were not
supported by probable cause. The court again dismissed the
charges against defendants. The people appeal. *Held:*

The trial court correctly granted the motion to suppress. The
police officers involved in the arrests of defendants and the
seizure of the evidence in this case detained defendants well
beyond the scope of a *Terry* stop based upon a generalized
suspicion or hunch and then searched for a crime to connect to
defendants. Because the evidence was seized as a result of an
unlawful detention, it may not be used at trial.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — APPEAL.
The Court of Appeals will reverse a trial court's decision follow-

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error § 880 *et seq.*
[2] 5 Am Jur 2d, Arrest § 1.
[3] 5 Am Jur 2d, Arrest § 44 *et seq.*
[4] 68 Am Jur 2d, Searches and Seizures §§ 33, 58, 103.
[5] 29 Am Jur 2d, Evidence §§ 408, 425.

ing a suppression hearing only if the decision is clearly erroneous.

2. SEARCHES AND SEIZURES — FOURTH AMENDMENT.

A seizure occurs within the meaning of the Fourth Amendment from the moment police approach and detain an individual so that the individual is not free to leave (US Const, Am IV).

3. SEARCHES AND SEIZURES — POLICE DETENTION — REASONABLE SUSPICION — OBJECTIVE FACTS.

A generalized suspicion or hunch that an individual is involved in criminal activity is not sufficient to justify police detention of the individual; to justify a brief on-the-scene intrusion, police officers must have a reasonable suspicion, based on objective facts, that the individual detained is involved in criminal activity, and the intrusiveness of the police activity must be carefully limited to the circumstances that justified the original detention.

4. CRIMINAL LAW — SEARCHES AND SEIZURES — STOP AND FRISK — CONSENT — PROBABLE CAUSE.

A police officer may ask questions and pat down a suspect for weapons but any further detention or search must be based on consent or probable cause.

5. CRIMINAL LAW — EVIDENCE — UNLAWFUL DETENTION.

Evidence seized as a result of an unlawful detention may not be used at trial.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *A. George Best II,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Stuart B. Lev),* for Mark Bryant and Keith White.

*Anthony Penta,* for Charles Fry.

*Lawrence R. Greene,* for Sherry White.

Before: GRIBBS, P.J., and WAHLS and HOOD, JJ.

PER CURIAM. The people appeal as of right from

the trial court's grant of defendants' motion to suppress evidence following a *Talley* hearing *(People v Talley,* 410 Mich 378, 390; 301 NW2d 809 [1981]) held by order of this Court.

Defendants were charged with breaking and entering a place of business with intent to commit larceny, MCL 750.110; MSA 28.305. Defendants joined in a motion to suppress evidence, which the trial judge granted. The people appealed, and this Court remanded for the *Talley* hearing. The evidence presented at that hearing is summarized as follows:

While on routine patrol on November 30, 1981, at about 3:40 a.m., Hamtramck Police Officers Stanley Sadzinski and Harry Chylinski observed several people running on a sidewalk in the same direction. The officers observed the runners enter a parked car. The officers did not see the runners carry anything or place anything in the car. Officer Sadzinski testified, "I thought it was a rather suspicious situation where I had several people running toward that parked car at that time in the morning".

The officers pulled alongside the parked car and approached the car on foot. The officers stated that the occupants of the car, defendants, were not free to leave at that point. The officers "asked" each defendant to exit from the vehicle, one by one, and asked each defendant why he or she was in that neighborhood and running down the street. Defendant Bryant replied that he was looking for a friend's house, but could not give an address. Defendant Keith White said he was with Mark Bryant. Defendant Fly also said he was looking for a friend's house. Defendant Sherry White said they were looking for a party store around the corner. Officer Chylinski said there was no party

store nearby and "we weren't satisfied with the answers we were getting".

The officers testified that two other officers arrived in another patrol car and detained the defendants while Officers Sadzinski and Chylinski checked several nearby residences to determine whether a crime had been committed. The officers did not find any evidence of a crime. Following that investigation, the officers received a radio report of a silent alarm activated at a jewelry store down the street from where defendants had been running. While some of the officers continued to detain defendants, the other officers investigated and found that someone had broken into the jewelry store. The investigating officers radioed the detaining officers and instructed them to arrest the defendants.

Officer Sadzinski testified that the jewelry store was 150 feet from defendants' vehicle. Officer Chylinski said that the store was about 250 feet from the location where defendants were first observed running. Officer Sadzinski first testified that officers detained the defendants for six to seven minutes prior to the report of the jewelry store alarm. On cross-examination, however, he admitted it might have been "a good ten minutes" and that he "[couldn't] say for sure". Neither officer had any evidence or knowledge that a crime had been committed until the alarm report. Although there previously had been "B & E's in this part of town", it was not a high crime area.

Officer Sadzinski impounded defendants' vehicle and conducted a standard police inventory of the interior. He found no evidence of a crime. Detective Daniel Budnick prepared an affidavit for a search warrant to examine the vehicle's trunk. That document contained information related to

him by Officers Sadzinski and Chylinski. A magistrate signed the warrant even though Budnick neglected to sign the affidavit. The police subsequently forced open the trunk and found merchandise allegedly stolen from the jewelry store.

The trial court found the search warrant invalid for the lack of the affiant's signature. *People v Goff,* 401 Mich 412; 258 NW2d 57 (1977). The court also concluded that, even if the officers' initial stop of the defendants was a reasonable action, the subsequent detention without evidence of criminal wrongdoing violated the Fourth Amendment to the United States Constitution. The trial court doubted that the detention had lasted only ten minutes. Finally, the court decided that the defendants' arrests and the subsequent issuance of the search warrant were not supported by probable cause, even if the initial detention was a valid one.

This Court will reverse a trial court's decision following a suppression hearing only if it is clearly erroneous. *People v Walker,* 130 Mich App 304; 343 NW2d 528 (1983); *People v Mathews,* 109 Mich App 129, 131; 311 NW2d 314 (1981). The people argue that the trial court clearly erred for three reasons: (1) the initial stop and detention of the defendants by the police officers was justifiable and lawful; (2) the subsequent arrest was supported by probable cause; and (3) even if the search warrant was invalid because the affidavit was not signed, the officers did lawfully search the trunk. We find the first issue dispositive.

From the moment the officers approached and detained defendants, and the latter were not free to leave, a "seizure" had occurred within the meaning of the Fourth Amendment. US Const, Am IV; *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). To justify such a brief on-the-scene

intrusion, police officers must have a reasonable suspicion, based on objective facts, that the individual detained is involved in criminal activity. *Brown v Texas,* 443 US 47, 51; 99 S Ct 2637; 61 L Ed 2d 357 (1979).

A generalized suspicion or hunch is not enough to validate such police action. *People v Burrell,* 417 Mich 439, 457; 339 NW2d 403 (1983). Moreover, the intrusiveness of the police activity must be carefully limited to the circumstances that justified the original detention. *Id.* A police officer may ask questions and pat down the suspect for weapons, *Terry, supra,* but any further detention or search must be based on consent or probable cause. *Dunaway v New York,* 442 US 200, 212; 99 S Ct 2248; 60 L Ed 2d 824 (1979); *United States v Brignoni-Ponce,* 422 US 873, 880-882; 95 S Ct 2574; 45 L Ed 2d 607 (1975); *People v Freeman,* 413 Mich 492; 320 NW2d 878 (1982); *People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978), *lv den* 406 Mich 906 (1979).

In *Dixon, supra,* this Court found that a 20-minute detention of the defendant by police officers following a *Terry* stop was without probable cause and invalid. In *Dixon,* the officers stopped defendant after observing him running in the early morning hours in an area where there had recently been several early morning break-ins. The officers did not know if any crime had been committed prior to detaining Dixon or if Dixon had committed any crime. This Court considered a brief investigative stop to request Dixon's identification justified, but the subsequent 20-minute detention in the squad car while the officers surveyed the surrounding area was beyond the scope of a *Terry* stop. Because the officers did not have probable cause to detain Dixon until they found

that a crime had been committed, *i.e.*, after 20 minutes had passed, Dixon's detention after the brief *Terry* stop was illegal.

"*Terry v Ohio* permits only a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. Detention for something more cannot be justified under *Terry v Ohio, supra. Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972). Under *Terry,* the officer making the stop must be suspicious at the time the stop is made that criminal activity is afoot. *Although the police in this case were somewhat suspicious when defendant was first stopped, they had no further authority to detain defendant afterward while one of the officers went to check to see if criminal activity were afoot. The scope of the police power to detain must be related to the justification for the stop at its inception—not to an after-found justification.*

"Here the police merely saw two men running in the early morning, a not uncommon sight in our times. Nor did the police proffer any facts to justify the intrusion upon defendant's freedom. Nothing elicited from defendant or his companion would give any cause to increase police suspicions." *Dixon,* p 277 (emphasis added).

In this case, the police arguably had less justification than the *Dixon* officers to conduct a *Terry*-type investigation. By the officers' own testimony, the area involved here was not a high crime area. However, even if we assume that Officers Chylinski and Sadzinski's initial stop of defendants was valid, their continuing detention of defendants was unlawful. Neither officer had knowledge of recent criminal activity in the area nor any objective information connecting the defendants with a crime. Nor do we regard the defendants' responses to the officers' questions as highly unusual. Rather, we find that the officers detained the

defendants well beyond the scope of a *Terry* stop, based upon a generalized suspicion or hunch, and then searched for a crime to connect to defendants. Courts in this state have repeatedly disapproved of the practice of detaining a suspected criminal while looking for a crime. *Burrell, supra; Dixon, supra.*

Evidence seized as a result of an unlawful detention may not be used at trial. *People v Bloyd,* 416 Mich 538, 556; 331 NW2d 447 (1982). Accordingly, the trial judge correctly granted the motion to suppress in this case.

Affirmed.