PEOPLE v CHAMBERS

Docket No. 130410. Submitted December 10, 1991, at Detroit. Decided
July 20, 1992, at 9:30 A.M.

Allan Chambers, Gary Chambers, and William K. Honeycutt
were charged in the Detroit Recorder's Court with several
counts of breaking and entering an unoccupied building with
intent to commit larceny. The court, Dalton A. Roberson, J.,
dismissed the charges, ruling that the defendants' arrests were
illegal because they were preceded by an unreasonable investi-
gatory stop. The arrests were made after the police were
alerted to suspicious activity by three white males at a golf
course at 3:00 A.M. At the course, an officer found equipment
and footprints in the snow leading to an apartment complex,
and radioed other officers to watch for three white males
suspected of larceny headed toward the apartment complex.
Another officer observed and detained the defendants as they
were leaving the apartment complex in an automobile. The
first officer arrived at the apartment complex, observed the
defendants' footwear, went back to the golf course to reexamine
the footprints, and concluded that the defendants' shoes
matched the footprints. Twenty minutes elapsed between the
initial stop of the defendants and their arrests. The prosecution
appealed.

The Court of Appeals *held:*

1. An investigatory stop must be founded on a particularized
suspicion, based on an objective observation of the totality of
circumstances, that the person stopped has been, is, or is about
to be involved in criminal wrongdoing. Under the circum-
stances of this case, the police officer who stopped the defen-
dants did so with reasonable suspicion that they had been
engaged in criminal wrongdoing.

2. In determining whether a detention is too long in duration
to be justified as an investigatory stop, the critical inquiry is
whether the police diligently were pursuing a means of investi-
gation that likely would confirm or dispel their suspicions
quickly, during which it was necessary to detain those stopped.
In this case, the defendants' prearrest detentions were reason-
able and provided no grounds either for suppression of the
evidence or dismissal of the charges.

Reversed and remanded.

SULLIVAN, J., dissenting, stated that, under the circumstances of this case, the police officer who stopped the defendants did not have a reasonable, articulable suspicion that the defendants had committed a crime.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Stempien & Stempien, P.C.* (by *Scott D. Kappler*), for Allan Chambers on appeal.

*Jerome Harris,* for Gary Chambers on appeal.

*James A. Waske,* for William K. Honeycutt on appeal.

Before: MICHAEL J. KELLY, P.J., and SULLIVAN and CONNOR, JJ.

CONNOR, J. Defendants were charged with several counts of breaking and entering an unoccupied building with intent to commit larceny, MCL 750.110; MSA 28.305. The trial court granted defendants' motion to dismiss based on their claim of an illegal arrest. The people appeal as of right. We reverse.

At about 3:00 A.M. on March 5, 1990, Canton Township Police Officer Jerry Hardesty was called to investigate a "suspicious situation." He talked to a tow-truck driver who had seen three white men moving something on a golf course near a highway he was traveling. When the driver confronted them, the men had threatened to "cap" him, and then had run away. Hardesty confirmed that a pile of "equipment" had been left behind,

and saw three sets of footprints in the five inches of freshly fallen snow.

The footprints led in the direction of an apartment complex. Hardesty radioed for other officers to be on the lookout for three white males suspected of larcenous activity headed in the direction of the apartment complex. Officer Daniel Antieau heard the radio message. He saw three white men, the defendants, leaving the apartment complex in an automobile. The car was the only one on the road, and there were no other tire tracks in the snow.

Officer Antieau stopped the car and began to question the driver. A couple of minutes later, Officer Hardesty arrived and saw that two of the men were wearing work boots and the third was wearing tennis shoes. He went back to the abandoned equipment and followed the tracks in the snow. He saw that the tracks were consistent with the shoes of the men Antieau had stopped. The tracks led to a storage locker facility that had obviously been broken into. In one of the storage rooms, Hardesty found the print of a tennis shoe on the top of a table. Officer Hardesty radioed Officer Antieau, who placed all three men under arrest. In all, defendants were detained for about twenty minutes before they were formally arrested.

The prosecution contends on appeal that the twenty-minute detention did not transform the "investigative stop" into an illegal arrest, and that therefore the trial court erred in dismissing this case. We agree.

We first note that suppression of evidence, not dismissal of the charge, is the proper remedy for an illegal search or seizure. *People v Dalton,* 155 Mich App 591, 597; 400 NW2d 689 (1986). However, without the evidence obtained as a result of

the twenty-minute detention, there would be nothing to tie defendants to the crimes with which they were charged, making dismissal inevitable.

A trial court's decision to suppress evidence will not be disturbed unless the ruling was clearly erroneous. *People v Martinez,* 187 Mich App 160, 171; 466 NW2d 380 (1991), lv den 439 Mich 929 (1992), remanded on other grounds on reconsideration 439 Mich 979 (1992). A decision is clearly erroneous if, although there is evidence to support it, the Court is left with a definite and firm conviction that a mistake has been made. *Id.* Although we find no clear error in the trial court's factual findings in this instance, we reverse because we are left with the definite and firm conviction that the trial court erred in suppressing the evidence.

Whenever a police officer stops someone and restrains that person's freedom to leave, the officer has "seized" the person under the Fourth Amendment. *Terry v Ohio,* 392 US 1, 16; 88 S Ct 1868; 20 L Ed 2d 889 (1968). However, the constitution does not forbid all seizures, only unreasonable ones. *Id.* at 9. A brief stop of a suspicious individual, in order to maintain the status quo momentarily while more information is obtained, may be reasonable. *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972). And, "If the purpose underlying a *Terry* stop—investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry and Adams." Michigan v Summers,* 452 US 692, 701, n 12; 101 S Ct 2587; 69 L Ed 2d 340 (1981).

In determining whether an "investigatory stop" is reasonable, the court must examine both the character of the official intrusion and its justification. *Id.* at 701. Such an "investigatory stop" must

be founded on a particularized suspicion, based on an objective observation of the totality of the circumstances, that the person stopped has been, is, or is about to be involved in criminal wrongdoing. *People v Shabaz,* 424 Mich 42, 59; 378 NW2d 451 (1985). See also *People v Armendarez,* 188 Mich App 61, 66-68; 468 NW2d 893 (1991).

While arguing in support of the trial court's dismissal, defendants question whether Officer Antieau had a particularized suspicion sufficient to justify stopping the car. We agree with the trial court's implicit finding that he did.

A police officer's reasonable suspicion may be based on information obtained from another. *Adams, supra* at 147. See also *People v Estabrooks,* 175 Mich App 532, 536-537; 438 NW2d 327 (1989). It was reasonable for Officer Antieau to suspect that these were the three men about whom Officer Hardesty had radioed. They were the only people seen at the apartment complex. They were three white men in a group. They were leaving the area to which the three "suspects" had fled. And the lone tracks in the snow clearly reflected that their car was the only one to have left the apartment complex in some time.

Moreover, it was reasonable for Officer Hardesty, and therefore Officer Antieau, to suspect the men had been involved in criminal activity. They had been seen moving equipment on a golf course at three in the morning during a heavy snowfall. When discovered, they threatened violence, then abandoned the equipment and fled.

Defendants' conduct raises a reasonable inference that the equipment had been obtained illegally. This behavior was far more indicative of criminal activity than merely running,[1] sitting in a

[1] *People v Bryant,* 135 Mich App 206; 353 NW2d 480 (1984); *People v Dixon,* 85 Mich App 271; 271 NW2d 196 (1978).

parked car,[2] driving away from a business after hours,[3] carrying a brown paper bag,[4] or being black and driving a car slowly in a predominantly white neighborhood.[5] Hardesty had a particularized suspicion of criminal activity, which he voiced when he radioed that he thought the equipment had been stolen. Compare with *Shabaz, supra* at 63-64.

The possibility that the occupants of the car were engaged in criminal conduct was strong enough that, upon an objective appraisal of the situation, we would be critical of the officer had he failed to stop the car and conduct a brief investigation to determine if, in fact, an offense had occurred in the area. We find Officer Antieau's suspicion that the three had been involved in criminal activity to be reasonable. Thus, the investigatory stop was justified.

The trial court decided that although the stop may have been justified, holding the men for twenty minutes was not. We disagree. A twenty-minute detention does not transform an investigatory stop into an arrest as a matter of law. Compare *United States v Sharpe*, 470 US 675, 686; 105 S Ct 1568; 84 L Ed 2d 605 (1985), with *United States v Place*, 462 US 696; 103 S Ct 2637; 77 L Ed 2d 110 (1983). The question that must be asked in assessing whether a detention is too long in duration to be justified as an investigatory stop is whether the police were diligently pursuing a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain those stopped. *Sharpe, supra*.

The police did not have to engage in a "fishing

---

[2] *People v Freeman,* 413 Mich 492; 320 NW2d 878 (1982).

[3] *People v Bloyd,* 416 Mich 538; 331 NW2d 447 (1982).

[4] *People v Shabaz,* 424 Mich 42; 378 NW2d 451 (1985).

[5] *People v Burrell,* 417 Mich 439; 339 NW2d 403 (1983).

expedition" to determine whether the equipment had been stolen. Compare with *People v Bloyd,* 416 Mich 538; 331 NW2d 447 (1982). The newly fallen snow made it possible for them to confirm or dispel their suspicions in a matter of minutes by following the footprints to find out where the equipment had come from. The police diligently pursued this avenue of investigation until they, in fact, confirmed their suspicions.

Moreover, it was necessary to detain defendants while following the tracks in the snow. Although the three men's identities could have been determined very quickly, the circumstances indicated that they had been "caught in the act." This being the case, they were likely to have in their possession evidence of the crime, which would be lost absent detention.

Under the circumstances, the twenty-minute detention was reasonable. Therefore, the detention was not grounds for suppression of the evidence, and dismissal was not mandated.

Reversed and remanded. We do not retain jurisdiction.

MICHAEL J. KELLY, P.J., concurred.

SULLIVAN, J. *(dissenting).* I dissent.

Defendants were charged with breaking and entering an unoccupied building with intent to commit larceny, MCL 750.110; MSA 28.305. The circuit court granted defendants' motion to dismiss on the ground that the prearrest investigative detention was unreasonably long. I would affirm.

The trial court found that the length of detention in this case, twenty minutes, while police investigated to determine if a crime had been committed, was "unusual" and dismissed the charges. We review the court's findings for clear error. *People v Bryant,* 135 Mich App 206, 210;

353 NW2d 480 (1984). Under the circumstances, the trial court's finding was not clearly erroneous.

The trial court focused on the length of the detention. The prosecution argues that it was reasonably necessary to pursue an investigation, relying on *United States v Sharpe*, 470 US 675; 105 S Ct 1568; 84 L Ed 2d 605 (1985). I would not address the length of detention, because the initial stop was not justified. The officer who stopped defendants' car had no reasonable, articulable suspicion that defendants had committed a crime. *People v Armendarez*, 188 Mich App 61, 66-67; 468 NW2d 893 (1991). He stopped their car solely on the basis of a radio report that three men, possibly white, had fled on foot from the area of a possible larceny. A different officer received information from a citizen-informant and tracked the car from the area where the men were last seen. That officer, however, was not the one who stopped the car, and the officer who did stop the car had none of the information that the other officer had obtained. The officer who stopped the car neither observed the defendants acting suspiciously nor trailed their car from the scene of the first observed suspicious activity. Compare *People v Estabrooks*, 175 Mich App 532, 538; 438 NW2d 327 (1989). The connection here between the stop and the later-discovered crime is too attenuated to pass constitutional muster.

I also disagree with the prosecution's contention that the court should not have dismissed the charges because the only possible remedy was suppression of evidence. I note first that the prosecution failed to raise this objection in the trial court. Even if it is not waived, and even if the appropriate order would have been to suppress evidence, this case would have been dismissed. The

only evidence linking these defendants to the crime flowed from the illegal stop.

I would affirm.