*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 28, 2021

Plaintiff-Appellee,

v

No. 350343
Kent Circuit Court
LC No. 18-008475-FH

CLARENCE JEFFREY HUNT,

Defendant-Appellant.

Before: SHAPIRO, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

A jury convicted defendant, Clarence Jeffrey Hunt, of two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(a) (victim under 13 years old), and the trial court sentenced him to concurrent upward departure sentences of 14 to 22 years' imprisonment. On appeal, defendant contends that the trial court denied his right to present a defense, improperly scored the sentencing guidelines, and imposed an unreasonable and disproportionate departure sentence. For the reasons discussed below, we affirm defendant's convictions and the trial court's scoring of the sentencing guidelines, but remand for clarification regarding the departure sentence imposed by the trial court.

## I. BASIC FACTS

This case arises out of the sexual assault of two victims under the age of 13, MD and ZD. The victims moved in with defendant and his then-wife, Deborah Hunt, in 2016, while their father was in prison following a conviction for fraud and their mother was either in prison or had left the United States.[1] According to MD's testimony at trial, defendant began touching her

---

[1] The victim's mother appears to have been convicted of fraud along with their father. MD testified outside the presence of the jury that her mother "was given a choice to stay, like longer in prison or like sign the papers and leave. So she signed and left." MD did not know whether

-1-

inappropriately two or three months after she came to live with him and Mrs. Hunt, and that he started "little by little." At first, defendant touched her bra strap when hugging her goodbye in the mornings before she left for school. Things then progressed to defendant pulling up her shirt to look at her breasts in her bra, and then to removing her bra to touch and, on one occasion, to lick her breasts. MD testified that most of the contact occurred in the garage; if it happened in the house, it was at a time when her siblings were playing outside. According to MD, defendant also had her sit on his lap and would move forward "like humping," asked her to massage his private parts, which she refused to do, offered her alcohol and cigarettes as enticements for sexual favors, and showed her cartoon pornography. MD testified that around Thanksgiving 2017, defendant put his hands under her underwear and rubbed her vagina. ZD testified that defendant touched her breasts twice, both times over her clothes.

The defense called two of defendant's daughters and their husbands, each of whom testified primarily about defendant's movements the day before and on Thanksgiving Day, 2017. Testifying on his own behalf, defendant denied ever inappropriately touching the victims. He admitted that he would hug the girls before they left for school, but insisted he never touched them for a sexual purpose or for any type of sexual gratification. Ultimately, the jury found defendant guilty as indicated, and the trial court sentenced him as noted above. This appeal followed.

## II. RIGHT TO PRESENT A DEFENSE

Defendant first contends that, in the absence of any direct physical evidence of the sexual abuse alleged, this case was essentially a credibility contest. Defendant maintains that the immigration status of the victims' father provided a motivation for the victims to lie, and by excluding such evidence, the trial court denied his right to present a defense. We find no error.

"We review preserved claims of evidentiary error for an abuse of discretion. An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Bergman*, 312 Mich App 471, 482-483; 879 NW2d 278 (2015) (quotation marks and citation omitted). We review de novo "the constitutional question whether a defendant was denied [the] constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

After voir dire, the trial court heard a motion in limine that revolved in part around introducing evidence of the victims' father's fraud conviction for its presumed effect on his immigration status and on the victims' testimony. Defendant argued that the victims may have been motivated to fabricate their allegations of sexual assault because of their father's immigration status or the fear that they would be deported. Asked to clarify, defense counsel argued, "if it's the children doing it, it's because perhaps they -- they perceive the danger that they're going to be deported, too, or their dad's going to be deported." The prosecution responded in relevant part that there was no evidence to suggest that the victims were coached by the father and that the case had nothing to do with the father's immigration status.

---

her mother was a citizen of the United States. The victims' two younger siblings also went to live with defendant and Mrs. Hunt, but they are not part of this proceeding.

The trial court allowed the parties to question the victims outside the jury's presence regarding what they knew about their father's immigration status. MD testified in part that when these allegations arose, she did not know what deportation meant, she never worried or felt like she needed to help on issues of deportation, that this case had nothing to do with deportation issues, and no one ever told her—nor did she believe—that making sexual assault allegations would help her father's deportation issue. ZD testified similarly.

The trial court subsequently determined that there was no evidence to support defense counsel's theory that the victims were motivated to fabricate sexual assault allegations out of fear that their father may be deported and ruled that any evidence regarding the father's alleged deportation issues was irrelevant and, therefore, inadmissible. The court further found that even if such evidence was relevant, it should be excluded under MRE 403 because its probative value was minimal and was substantially outweighed by the danger of unfair prejudice.[2]

"The right to present a defense is a fundamental element of due process[.]" *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006) (quotation marks and citations omitted). "But this right is not absolute: the accused must still comply with 'established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008), quoting *Chambers v Mississippi*, 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted).

"[E]vidence is relevant if two components are present, materiality and probative value." *People v Feezel*, 486 Mich 184, 197; 783 NW2d 67 (2010) (quotation marks and citation omitted). "Materiality is the requirement that the proffered evidence be related to any fact that is of consequence to the action." *Id*. (quotation marks and citation omitted). Probative value refers to the extent to which the evidence tends to make a material fact "more probable or less probable than it would be without the evidence[.]" See *id*. (quotation marks and citation omitted); MRE 401.[3] However, even evidence that is relevant "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "[E]vidence is unfairly prejudicial when there exists a danger that *marginally* probative evidence will be given undue or preemptive weight by the jury." *Feezel*, 486 Mich at 198 (quotation marks and citations omitted).

We conclude that the trial court did not clearly err by excluding evidence of the father's immigration status on the ground that it was irrelevant. Defendant's theory of the case was that

---

[2] The parties subsequently stipulated to the admission of the father's conviction for fraud for the limited purpose of accounting for why the victims' parents were imprisoned.

[3] MRE 401 states:

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Mrs. Hunt and the victims' father had a romantic relationship and the victims fabricated allegations of sexual assault so they could remain in the United States with their father (or, presumably, with Mrs. Hunt if their father was deported). However, defendant has provided no evidence that the victims' father was even at risk of deportation. To the contrary, the *record reflects receipt of a letter from the father's federal attorney stating that the father was* not subject to deportation. Further, defendant has failed to provide any logical connection between the father's immigration status and the victims' willingness to lie about the sexual assault allegations. Defendant provided no evidence, or even argumentation, regarding how sexual assault allegations made by an alleged illegal immigrant's children provide such immigrant the opportunity to avoid deportation, and both victims denied that their sexual abuse allegations had anything at all to do with their father's immigration status.

In sum, because defendant's theory that the father's immigration status was somehow relevant to the victims' testimony is mere speculation, the trial court did not clearly err by excluding mention of the father's immigration status on the ground that it was irrelevant. The exclusion of irrelevant evidence does not infringe on a defendant's right to present a defense. *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008) ("A criminal defendant's constitutional right to present a defense [is not] infringed by MRE 402, which simply bars the admission of irrelevant evidence."). In addition, we also agree with the trial court's conclusion that, even if defendant's speculations were sufficient to establish the relevance of the father's immigration status, exclusion of the evidence under MRE 403 would have been proper. The minimally probative value of such evidence would have been substantially outweighed by the risk of unfair prejudice arising from the controversial and complex nature of immigration status.

## III. SENTENCING GUIDELINES

Defendant next argues that the trial court erred in its assessment of 10 points for offense variable (OV) 4 and 15 points for OV 15. We disagree We review the trial court's factual determinations under the sentencing guidelines for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A decision is clearly erroneous if, although there is evidence to support it, the Court is left with a definite and firm conviction that a mistake has been made." *People v Chambers*, 195 Mich App 118, 121; 489 NW2d 168 (1992). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 4 addresses psychological injury to a victim. MCL 777.34. Ten points are properly assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The court need not find that the victim actually sought treatment. See MCL 777.34(2). "The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014).

Record evidence supports the trial court's assessment of 10 points for OV 4. At sentencing, the trial court read a letter from the victims' father stating that, because of the sexual assault, the girls were afraid of men with beards who resembled defendant, had bad dreams in which they believe they see defendant, and were in counseling. MD told the court during her victim-impact

statement that the experience affected the way she looked at people and the world, that she has "terrible dreams," that it was hard to focus and pay attention at school, and that there are times when a smell or a place will trigger emotions associated with the abuse. ZD also stated that she does not trust people as before, has nightmares and flashbacks, looks at older men differently, particularly those who resemble defendant, has trouble concentrating at school, is unable to make eye contact with her male teachers, and avoids certain community events that she knew defendant used to attend. These statements, along with the evidence that the victims were seeing counselors, supports the trial court's assessment of 10 points for OV 4.[4]

Defendant next contends that the trial court erred in assessing 15 points for OV 10, which addresses the exploitation of vulnerable victims. See MCL 777.40. Fifteen points are properly assessed where predatory conduct was involved. "Predatory conduct" is preoffense conduct that is predatory rather than "purely opportunistic criminal conduct." *People v Huston*, 489 Mich 451, 462; 802 NW2d 261 (2011). Not just "*any* manner of preoffense conduct" qualifies for the higher assessment because that would require a 15-point assessment for OV 10 in every case, rendering the other scoring options nugatory. *Id*. at 461 (quotation marks omitted). "Only those forms of preoffense conduct that are commonly understood as being predatory in nature, e.g., lying in wait and stalking" are considered "predatory conduct." *Id*. at 462 (quotation marks omitted). This Court has also recognized that "grooming" can constitute predatory conduct for purposes of assessing 15 points for OV 10. See *People v Steele*, 283 Mich App 472, 491-492; 769 NW2d 256 (2009). "Grooming refers to less intrusive and less highly sexualized forms of sexual touching, done for the purpose of desensitizing the victim to future sexual contact." *Id*. at 491-492.

The Michigan Supreme Court has laid out the following three-part test to assist trial courts in determining whether 15 points should be assessed under OV 10:

> (1) Did the offender engage in conduct before the commission of the offense?

> (2) Was this conduct directed at one or more specific victims who suffered from a readily apparent susceptibility to injury, physical restraint, persuasion, or temptation?[5]

---

[4] To the extent defendant objects to the court's reliance on the victims' father's letter and the victims' impact statements, his objection is misplaced. A trial court may consider all record evidence when calculating the sentencing guidelines, *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015), and the victims were entitled to make a victim-impact statement, MCL 780.765(1). The court could also consider the letter submitted by the victims' father. See *People v Earl*, 297 Mich App 104, 110; 822 NW2d 271 (2012) (considering other statement, including the victim's impact statement and a letter submitted to the court, when assessing points for OV 4).

[5] The Supreme Court later clarified that, for purposes of the second prong, there need not be a specific victim, but simply a "victim." *Huston*, 489 Mich at 458 n 4, 459-464.

(3) Was victimization the offender's primary purpose for engaging in the preoffense conduct? [*People v Cannon*, 481 Mich 152, 161-162; 749 NW2d 257 (2008).]

The trial court correctly assessed 15 points for OV 10 based on the presence of predatory conduct in the form of grooming. MD testified that defendant's inappropriate touching began innocuously enough, with the touching of her bra strap when he hugged her before she left for school, but progressed incrementally to the point that he touched and licked her bare breast, would place her in his lap to "hump" her, and rubbed the outside of her vagina over her underwear. There was also evidence that defendant attempted to normalize his inappropriate behavior by showing MD cartoon pornography, and that he attempted to negotiate with her by offering her cigarettes and alcohol in exchange for sexual favors. MD testified that these occurrences happened every day, or at least every other day, while she was alone with defendant in the garage or the house. See *People v Ackah-Essien*, 311 Mich App 13, 37; 874 NW2d 172 (2015) (holding that "[t]he timing and location of an offense—waiting until a victim is alone and isolated—is evidence of predatory conduct"). Thus, defendant engaged in preoffense conduct for the purpose of victimization, meeting the first and third prong of the *Cannon* test. As to the second prong, defendant directed his conduct at MD and, to a lesser extent, ZD, who were rendered susceptible to injury or persuasion because of the circumstances that caused them to move in with defendant and Mrs. Hunt; specifically, the incarceration of their parents, and the physical abuse they suffered at the hands of prior caregivers.[6] On this record, we cannot say that the trial court clearly erred in assessing 15 points for OV 10.

## IV. DEPARTURE SENTENCE

Lastly, defendant argues that the trial court erred by sentencing him to an upward departure sentence of 14 to 22 years in prison when the sentencing guidelines called for a minimum sentence between 36 and 88 months.

We review a trial court's departure from the advisory sentencing guidelines for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). When reviewing a departure sentence for reasonableness, we examine whether the trial court adequately explained "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citation omitted). Factors to consider when determining "whether a departure sentence is more proportionate than a sentence within the guidelines range . . . include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id.* (citations omitted). A trial court abuses its discretion when it imposes a sentence that is not " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.'

---

[6] Deborah Hunt testified that she took the children in because their parents had gone to prison and the children were being physically abused by the family with whom they were living at the time.

" See *Steanhouse*, 500 Mich at 474, quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), abrogated on other grounds as recognized in *Steanhouse*.

At defendant's sentencing hearing, the trial court identified defendant's minimum sentencing guidelines range as 36 to 88 months. The court acknowledged that it had received letters written in support of defendant. The court stated that defendant had a right to assert his innocence and, therefore, that the court was not factoring into its sentence defendant's lack of remorse or failure to accept responsibility. The court then observed:

> The kind of damage that adults do, a grown man do [sic] to girls when you exploit them for your own sexual selfish purposes is just immeasurable.

> I think these two girls are very smart and strong girls, but you know, they're gonna have a tough road because of what happened to them in the garage and elsewhere.

> And, so that kind of conduct is worthy of really a harsh sanction form— from this Court and from society, which is why the guidelines are so high against you.

> In some respects, they're—they're low in that it doesn't really—and *I'm staying within the guidelines, so don't—don't get me wrong,* but it doesn't really reflect that number of times, it doesn't really truly take into account the relationship you had with them which was essentially stepfather to—to protect them and to take care of them while their own father was—was not available for a period of time, and you betrayed that trust and you betrayed your position of authority over them.

> And, maybe the—the—the guidelines take that into account, but maybe not. But I certainly think that the guidelines are fairly generous to you.

> It's the sentence of this Court that you be surrendered to the Michigan Department of Corrections for a period of not less than 14 years, not greater than 22 years. That is on both counts and they will run concurrently. [Emphasis added.]

After expressly stating that it was going to stay within the sentencing guidelines, which for the minimum was 36 to 88 months, the court then sentenced defendant to a minimum term of imprisonment almost twice as high as the minimum's maximum of 88 months (approximately 7.3 years). The reasons the court provided for its sentence included defendant's betrayal of the victims' trust, the abuse of his authority as surrogate parent to exploit their vulnerability for his own sexual gratification, and the fact that the guidelines did not "reflect the number of times" that defendant abused the victims. The court further noted the serious nature of defendant's offense and deemed it "worthy of really a harsh sanction." Nevertheless, given the court's observation that it was going to sentence defendant within the guidelines, it is not entirely clear whether the court intended these reasons as justification for a sentence at the high end of the minimum sentencing guidelines range or for the departure sentence imposed. And, if the court did intend to impose a departure sentence, the court's indication that the guidelines may or may not take certain factors into account is not sufficient to justify "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Dixon-Bey*, 321 Mich

App at 525 (quotation marks and citation omitted). Accordingly, we remand this matter and direct the trial court to either resentence defendant or to clarify what sentence the court intended to impose. If the court intended to impose a departure sentence, or does so on remand, it shall articulate its rationale for the departure and the extent of the departure. Finally, we also note that remand is necessary for the ministerial task of updating defendant's presentence investigation report (PSIR). The PSIR reflects a handwritten entry of 10 points next to OV 2, when that entry should be next to OV 4.

We affirm defendant's convictions, but remand for clarification of defendant's sentence or resentencing as indicated in this opinion and for correction of defendant's PSIR. We retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ David H. Sawyer
/s/ Jane M. Beckering

# Court of Appeals, State of Michigan

## ORDER

People of MI v Clarence Jeffrey Hunt

Docket No.    350343

LC No.        18-008475-FH

Douglas B. Shapiro
Presiding Judge

David H. Sawyer

Jane M. Beckering
Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court.

Proceedings on remand in this matter shall commence within 14 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, we affirm defendant's convictions, but we remand and direct the trial court to either resentence defendant or to clarify what sentence the court intended to impose. If the court intended to impose a departure sentence, or does so on remand, it shall articulate its rationale for the departure and the extent of the departure. We also instruct the trial court to make the necessary ministerial correction to the presentence investigation report (PSIR). The PSIR reflects a handwritten entry of 10 points next to OV 2, when that entry should be next to OV 4. The proceedings on remand are limited to these issues.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

January 28, 2021
Date

_____
Chief Clerk