*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL SCOTT MCNEAL,

        Defendant-Appellant.

UNPUBLISHED
June 17, 2021

No. 351900
Ottawa Circuit Court
LC No. 19-042741-FC

Before: BOONSTRA, P.J., and MARKEY and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 540 to 900 months' incarceration for the second-degree-murder conviction and 24 months' incarceration for the felony-firearm conviction. On appeal, defendant raises issues concerning the verdict form and his sentences. For the reasons stated below, we affirm.

## I. FACTS

Defendant and the victim were husband and wife. They had been experiencing marital difficulties and the victim, as a result, moved out of the marital home and into a trailer on the marital property. At approximately 3:00 a.m. on July 24, 2018, defendant entered the trailer where the victim was sleeping, armed with a rifle. Defendant fired the rifle five times, hitting the victim three times, and ultimately killing her. Defendant was thereafter charged with first-degree murder and felony-firearm.

At trial, defendant conceded shooting and killing his wife, but contended that it was done in the heat of passion, such that he was guilty of voluntary manslaughter rather than murder. The jury found defendant guilty of second-degree murder and felony-firearm, as indicated above. This appeal followed.

-1-

## II. VERDICT FORM

Defendant first argues that the trial court erred in its jury instructions and provided an incorrect verdict form because they both had the effect of foreclosing the possibility of a general not-guilty verdict on the murder charge, denying defendant of his right to a properly instructed jury. We disagree.

Defense counsel did not object to the jury instructions or to the verdict form at trial; therefore, these claims are unpreserved. See *People v Puroll*, 195 Mich App 170, 171; 489 NW2d 159 (1992); *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012) (A verdict form is essentially part of the package of jury instructions). This Court reviews unpreserved claims of instructional error for plain error affecting substantial rights. *People v Walker*, 504 Mich 267, 276; 934 NW2d 727 (2019).

A defendant is entitled to a properly instructed jury. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). Correspondingly, a verdict form must provide the jury with the opportunity to return a general verdict of not guilty. *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009). Defendant relies heavily on the *Wade* decision in support of his argument concerning an improperly instructed jury.

In *Wade*, the jury was provided with the following verdict form:

YOU MAY RETURN ONLY ONE VERDICT FOR EACH COUNT.

COUNT 1-HOMICIDE-MURDER FIRST DEGREE-PREMEDITATED (EDWARD BROWDER, JR)
__ NOT GUILTY
__ GUILTY
OR
__ GUILTY OF THE LESSER OFFENSE OF-HOMICIDE-MURDER SECOND DEGREE (EDWARD BROWDER, JR.)
OR
__ GUILTY OF THE LESSER OFFENSE OF-INVOLUNTARY MANSLAUGHTER-FIREARM INTENTIONALLY AIMED (EDWARD BROWDER, JR.)

***

[Id. at 465]

This Court found that the verdict form was defective because "because it did not give the jury the opportunity to return a general verdict of not guilty" of premeditated murder and the lesser included offenses. *Id.* at 468. The *Wade* Court also noted that "the verdict form would not have been defective if it had included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter." *Id.* at 468.

Unlike the verdict form in Wade, the verdict form in this matter did not present the not-guilty option only with the most serious form of homicide. The verdict form used in this matter provided:

You may return only one verdict on each charge. Mark only one box in each section of this sheet.

COUNT ONE: FIRST DEGREE PREMEDITATED MURDER.

☐  Not Guilty.

☐  Guilty of First-Degree Premediated Murder.

☒  Guilty of the less serious crime of Second-Degree Murder.

☐  Guilty of the lesser included offense of Voluntary Manslaughter.

As can be seen above, the not-guilty option for the homicide charge in this case provides exactly what *Wade* demands, an option whereby this jury could have returned not guilty for the entire homicide charge. Therefore, defendant presents no error requiring reversal.

Defendant also argues that the trial court's jury instructions obscured the availability of a general not-guilty verdict on the murder charge. Defendant primarily points to an instruction in which the trial court advised the jury, "[y]ou can go back to first-degree degree premeditated murder or second-degree murder after discussing voluntary manslaughter if you want to." However, defendant ignores the trial court's instructions immediately preceding that statement. The trial court instructed, "[i]n this case, there are several different homicide crimes that you may consider." The trial court instructed that the jury consider the crime of first-degree murder first, spending as much time as it wanted discussing that crime, and if it did not believe that defendant was guilty of first-degree premeditated murder, it should next consider the less serious crime of second-degree murder. The trial court instructed that the jury could "go back to first-degree premeditated murder after discussing second-degree murder" if it wanted to. The trial court further instructed that if the jury did not believe that defendant was guilty of second-degree murder, it should then consider the lesser included offense of voluntary manslaughter, and that it "could go back to first-degree degree premeditated murder or second-degree murder after discussing voluntary manslaughter" if it wanted. Thus, the essence of the instructions was that the jury may work its way through its factual determinations and return to potential outcomes as it saw fit. The instruction does exactly what the law demands; it properly instructs the jury as to the law. See *Riddle*, 467 Mich at 124. Taking the jury instructions and verdict form together, defendant has not shown that the trial court plainly erred in instructing the jury.

### III. OFFENSE VARIABLE (OV) 5

Defendant next argues that the trial court erred at sentencing when it assessed 15 points under OV 5 because there is nothing in the record to indicate that the victim's family sustained any psychological injury. We disagree.

This Court reviews the trial court's factual determinations at sentencing, which must be supported by a preponderance of the evidence, for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A decision is clearly erroneous if, although there is evidence to

support it, the Court is left with a definite and firm conviction that a mistake has been made." *People v Chambers*, 195 Mich App 118, 121; 489 NW2d 168 (1992). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

OV 5 addresses psychological injury to a member of a victim's family. MCL 777.35(1). The trial court here assessed 15 points for OV 5. An assessment of 15 points for OV 5 is proper when "[s]erious psychological injury requiring professional treatment occurred to a victim's family." In scoring OV 5, the trial court must consider the severity of the psychological injury that is presented, including how the injury has manifested itself before sentencing and whether it is likely to do so in the future—and whether a family member has already sought or received professional treatment. *People v Calloway*, 500 Mich 180, 186; 895 NW2d 165 (2017). The fact that psychological treatment has not yet been sought or received is not dispositive if the facts indicate that a serious psychological injury occurred and that treatment may be sought in the future, regardless of whether a family member presently intends to seek such treatment. *Id*. at 182. "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012) (quotation marks and citation omitted).

Our Supreme Court has explained that points "may not be assessed [for OV 5] solely on the basis of a trial court's conclusion that a 'serious psychological injury' would normally occur as a result of the crime perpetrated against the victim and . . . evidence of fear while a crime is being committed, *by itself*, is insufficient to assess points." *People v White*, 501 Mich 160, 162; 905 NW2d 228 (2017).[1] A trial court "may not simply assume that someone . . . would have suffered psychological harm . . . ." *Id*. at 163 (quotation marks and citation omitted). The statute requires "that serious psychological injury *occurred* . . . , not that a *reasonable* person in that situation would have suffered a serious psychological injury." *Id*. (quotation marks and citation omitted). However, "[t]he trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). This Court has endorsed a trial court's observation of a testifying witness's demeanor as being among the evidence supporting assessment of OV 5. *People v Steanhouse*, 313 Mich App 1, 39; 880 NW2d 297 (2015), rev'd in part on other grounds 500 Mich 453 (2017).

---

[1] *White* dealt specifically with OV 4, psychological injury to the victim, and not with OV 5. However, these OVs involve parallel statutory language, and this Court has explained that "[t]here is no reason to assume that OV 4 and OV 5 should be interpreted differently when they are two branches stemming from the same tree, for why abandon our usual presumption that identical words used in different parts of the same statute carry the same meaning." *People v Wellman*, 320 Mich App 603, 610-611; 910 NW2d 304 (2017) (quotation marks and citation omitted); see MCL 777.34.

The victim (and defendant's) son, KM (who was 17 years old at the time of the incident), testified at trial in this matter. He testified that he was inside the marital home on July 24, 2018, playing online video games when, around 2:00 a.m., he heard a loud "snap" coming from near the trailer where his mom had been sleeping on the property. KM testified that he looked outside and saw his father coming out of the trailer with a rifle. After his father disappeared from view, KM went out to the trailer and found his mother dead, with bullet holes in her body. KM testified that he immediately ran back to the house, locking every door in the house behind him because he was afraid his father was going to come in the house and kill him. KM testified that he heard the police arrive and went outside, at which point he was placed in handcuffs and dragged to the front of the house. The handcuffs were eventually removed as the police were advised what had occurred.

At sentencing, the trial court observed of KM's testimony:

> I saw [his] demeanor when he testified. I heard [him] testify that—the last time he saw his mother alive. I heard [him] testify when he said he found his mother, whose head was literally blown off, he walked into that mess. To suggest that [he] will not have and does not have serious psychological harm as a result of losing his mother and for all practical effect losing his father, now knowing that he saw his mom alive just a few hours before her death and then to see her in that state and then to be absolutely terrified thinking he was going to be the next victim, I heard that testimony, the court will score 15 points for offense variable 5.

We agree with the trial court's reasoning for assessing 15 points for OV 5. OV 5 does not require direct evidence that a victim's family member is undergoing psychiatric treatment. At sentencing, the trial court made clear that it had observed KM during his testimony and was convinced by his demeanor that he had suffered serious psychological injury. It is patently obvious that a 17-year-old who saw his mother's body immediately after she had been murdered by his father, feared that his father would then kill him, and was handcuffed and dragged by the police before the police knew what had occurred would suffer serious psychological injury requiring professional treatment. Defendant is not entitled to relief on this issue.

## IV. UPWARD DEPARTURE

Defendant argues that the imposed sentence was an unwarranted, disproportionate upward departure from the sentencing guidelines. We disagree.

The sentencing guidelines are now advisory. Thus, a trial court is not bound to select a minimum sentence that is within the range provided under the sentencing guidelines, and appellate courts will review a decision to depart from those guidelines only for reasonableness. See *People v Lockridge*, 498 Mich 358, 365; 870 NW2d 502 (2015). To be reasonable, a departure sentence must be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017). This Court reviews whether a trial court properly imposed a sentence that was proportionate to the offender and offense for an abuse of discretion. *Id*. at 471. Trial courts must "justify the sentence imposed in order to facilitate appellate review." *Lockridge*, 498 Mich at 392.

Defendant contends that the trial court placed undue emphasis on his prior 1992 conviction of felonious assault when considering a departure sentence. He asserts that the trial court should not have considered the prior conviction, given that even the sentencing guidelines do not allow the assessment of Prior Record Variable (PRV) points for "any conviction or juvenile adjudication that precedes a period of 10 or more years between the discharge date from a conviction or juvenile adjudication and the defendant's commission of the next offense resulting in a conviction or juvenile adjudication." MCL 777.50(1); see also *People v Butler*, 315 Mich App 546, 551-552; 892 NW2d 6 (2016). However, the trial court assessed defendant's PRV score at zero, thereby complying with MCL 777.50. And the 10-year rule applies only to assessing PRVs in calculating the advisory, minimum sentencing guidelines; it does not apply directly to imposition of the ultimate sentence. Moreover, this conduct is appropriately considered when determining whether a sentence is reasonable—that is, whether it was proportionate to the offense and to defendant. *Steanhouse*, 500 Mich at 474

In reviewing a departure sentence, "an appellate court's first inquiry should be whether the case involves circumstances that are not adequately embodied within the variables used to score the guidelines." *People v Milbourn*, 435 Mich 630, 659-660; 461 NW2d 1 (1990). Here, the trial court reasoned that defendant's 1992 conviction, which was factually similar to the instant case, related to the seriousness of the circumstances of the crime and of defendant's conduct in this case, although those prior circumstances were not embodied within the minimum sentencing guidelines because of the 10-year gap rule. Defendant appears not to challenge that connection, and in any event, has not shown that connection to be unreasonable. Defendant's 1992 conviction concerned his brutal beating of his first wife after it appeared the marriage would end. The trial court noted that his second marriage had lasted much longer, but defendant did not outgrow his propensity for control and violence over the women in his life.

Defendant also argues that the trial court failed to consider defendant's remorse and potential for rehabilitation. However, the trial court did consider those factors, although it considered defendant's statements of remorse "skeptically" and defendant beyond rehabilitation. Defendant, through his arguments on appeal, appears to disagree with those findings. But mere disagreement does not show that the trial court clearly erred in those findings. The trial court appropriately considered facts that were not taken into account in the sentencing guidelines.

Lastly, defendant argues that the sheer extent of the upward departure from the minimum sentencing guidelines range suggests that his sentence was unreasonable. We disagree.

The minimum sentencing guidelines exist as an aid to trial courts as to what sentence might be reasonable in particular circumstances. *People v Houston*, 261 Mich App 463, 474; 683 NW2d 192 (2004). On review, this Court is to determine whether the sentence imposed by a trial court is reasonable, as explained by the trial court and supported by factual findings. *Lockridge*, 498 Mich at 365. In this case, the trial court made specific factual findings and precisely explained its reasoning for arriving at the sentence it imposed.

Again, the trial court considered that defendant's behavior that was not embodied within the minimum sentencing guidelines and considered the specific facts concerning the circumstances of the offense, including the 1992 offense, that defendant shot his wife several times at point blank range "literally bl[owing]" her head off, and that defendant knew his teenage son was at home and

would discover his mother's dead body.  The trial court correctly acknowledged that there is no strict formula to follow when imposing a sentence outside of the guidelines range and indicated the factors that it considered in fashioning an appropriate sentence.  Thus, defendant has not shown that his imposed sentence is unreasonable or disproportionate.

Affirmed.

/s/ Mark T. Boonstra
/s/ Jane E. Markey
/s/ Deborah A. Servitto